**In re SCRIVER.**
No. 22282.

District Court, W. D. New York.
Jan. 17, 1935.

Frank Arthur Scriver, in pro. per.

John L. Murff, Acting U. S. Naturalization Examiner (for A. J. Karnuth, Acting District Director of Immigration and Naturalization, Buffalo District), for respondent.

KNIGHT, District Judge.

■ The petition alleges that petitioner entered the United States on March 7, 1900. Petitioner has proven residence in the United States prior to June 29, 1906, by the testimony of two witnesses. On April 28, 1927, he filed his declaration of his intention to become a citizen. On May 17, 1929, he filed a final application for naturalization. That application was dismissed May 1, 1930, on the ground that good moral character had not been established. On April 27, 1934, he filed the pending petition. It is admitted that the petitioner on April 27, 1927, was convicted of the violation of section 1296 of the Penal Law of the State of New York (Consol. Laws, c. 40), and that he was fined $200 and sentenced to serve six months in the Erie County Penitentiary. Execution of the penitentiary sentence was suspended and the petitioner placed on two years' probation as of April 27, 1927. Petitioner testified that he entered the United States from a visit to Canada in 1929.

On November 2, 1934, a warrant was issued by the Secretary of Labor directing petitioner's deportation to Canada by virtue of the provisions of section 19 of the Immigration Act of February 5, 1917 (8 USCA § 155). The warrant of deportation was issued on the specific charge that petitioner was convicted of a crime involving moral turpitude prior to entry into the United States, to wit, larceny. The warrant of deportation has not yet been executed.

The question at issue is whether an alien against whom a warrant of deportation is outstanding is entitled to become a naturalized citizen.

Section 4, subd. 4, of the Naturalization Act, June 29, 1906, 34 Stat. 596 (8 USCA § 382), provides that: "It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States, five years at least." The specific

issue here is what constitutes "residence" within the meaning and intent of the Naturalization Act.

The right of an alien to naturalization is a privilege accorded by the people of the United States as declared through its statutes. In the light of the ultimate purpose of the naturalization laws that aliens who become naturalized shall be loyal to the institutions and laws of the country, naturalization laws are and should be construed strictly as against the applicant for citizenship. Johannessen v. United States, 225 U. S. 227, 32 S. Ct. 613, 56 L. Ed. 1066; United States v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 61 L. Ed. 853; United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321. No case has been found in which the facts are exactly parallel with those presented here; but there is no uncertainty in the conclusion to be drawn from the decisions of many of the courts that "residence," as that word is used in the statute, means something more than mere living in the United States. The nearest parallel to the case at bar is found in United States v. Kreticos, 59 App. D. C. 305, 40 F.(2d) 1020, 1021. There a deserting seaman arrived in the United States on July 2, 1921. The Court of Appeals for the District of Columbia reversed the judgment of the Supreme Court of the District of Columbia holding that such seaman was entitled to a certificate of naturalization upon his petition filed on March 29, 1928. Among other things the court said: "The law fixes residence as one of the primary jurisdictional requirements. * * * The mere landing in this country without regular entry does not constitute such beginning to reside, upon which can be based a permanent, continuous residence; and an alien cannot begin a permanent residence except by entering in accordance with the Immigration Laws. * * * Appellee's entrance into the United States was a mere landing and he has never begun a residence here, and he cannot begin to reside continuously except by entering in accordance with the requirements of the immigration laws." In Petition of Connal (D. C.) 8 F.(2d) 374, 375, the petitioner, seaman, arrived at the port of New York as a member of a crew. He was discharged by the immigration authorities as an alien intending to reship. He obtained a certificate of arrival and sought naturalization under the provisions of the Naturalization Law which provides in effect that an alien who served three years on board a merchant vessel of the United States with certain tonnage may petition for naturalization without proof required by five years' residence as applicable to other aliens. The question raised was whether the certificate of arrival was a sufficient basis for the petition for naturalization. The court held that this certificate did not relieve the alien of proof that he had been admitted to permanent residence in this country or that he was a resident of this country when his declaration of intention was filed. Among other things, the court said: "In order to have a residence in the United States the alien must have entered and been admitted for the purpose of permanent residence, and if he was discharged by the immigration authorities simply for the purpose of reshipping, he was not permanently admitted but only temporarily allowed to remain as a guest pending reshipment, and did not thereby gain a residence." And further: "The petitioner could not become an American citizen until he began to reside permanently in the United States." The Connal Case also calls attention to the fact that the statute requires the alien to furnish a certificate of arrival stating "the date, place and manner of his arrival in the United States," as an indication that Congress did not intend to allow the alien "regardless of how he may have come into the country, to become a citizen," and as further indicating that the court had the right to look into the certificate to determine whether the petitioner was admitted as a permanent resident. In Zartarian v. Billings, 204 U. S. 170, 27 S. Ct. 182, 184, 51 L. Ed. 428, the court said: "She [child of naturalized parents born abroad] was debarred from entering the United States by the action of the authorized officials, and never having legally landed, of course could not have dwelt within the United States. Nishimura Ekiu v. U. S., 142 U. S. 651, 12 S. Ct. 336, 35 L. Ed. 1146." This citation is given as bearing upon the question of whether one illegally entering the United States can acquire residence within the meaning of the naturalization law. In re Jensen (D. C.) 11 F.(2d) 414, 415, an alien petitioner arrived at Norfolk, Va., as a seaman, on a foreign steamship. It appeared that the alien avoided inspection by the Immigration Bureau of the Department of Labor, remained unlawfully in this country without examination and formal admission, and without paying the head tax. Among other things, the court said: "Such an alien is incapable of acquiring a legal, bona fide residence upon which to predicate a valid declaration of in-

480

tention under the Naturalization Law, and not entitled to favorable consideration on a petition for naturalization." Aliens have no inherent or statutory right to be admitted to membership in the citizenry of the United States of America. Naturalization is solely and entirely a privilege extended through grace to an alien. In re Hollo .(D. C.) 206 F. 852, 853, the applicant for naturalization obtained entrance to this country upon the passport of another person, and it was held that he was not entitled to citizenship papers. In Kaplan v. Tod, 267 U. S. 228, 45 S. Ct. 257, 69 L. Ed. 585, the applicant had been ordered to be excluded. Before the order could be carried out the European War began. She was thereafter kept in this country until 1920, when an order of deportation was issued. Petitioner alleged the right to enter and remain in this country by virtue of the naturalization of her father, while she was a minor and in this country. It was not denied that she was rightly denied admission in 1914. In its opinion the court said: "The appellant [petitioner] could not lawfully have landed in the United States in view of the express prohibition of the Act of 1910 just referred to, and until she legally landed 'could not have dwelt within the United States.' Zartarian v. Billings, 204 U. S. 170, 175, 27 S. Ct. 182, 184, 51 L. Ed. 428." And further: "She [petitioner] never has been dwelling in the United States within the meaning of the Act. Still more clearly she never has begun to reside permanently in the United States within the later Act of March 2, 1907." Citing U. S. ex rel. Patton v. Tod (C. C. A.) 297 F. 385; U. S. ex rel. De Rienzo v. Rodgers (C. C. A.) 185 F. 334.

Residence, as a basis of the application for citizenship, means a legal residence. No other construction is reasonable. It is not reasonable to contend that one who has entered the country illegally through any length of continuous living in the country can acquire a residence as a basis for application for citizenship. The Naturalization Law contemplates intention to reside permanently and contemplates the opportunity of the alien during the period of probation as a resident to acquire knowledge of the English language and forms of government. The statute specifically provides that the alien shall be able to speak and understand the English language and have such knowledge. If the contention urged in favor of one such as this alien is sustained, the alien could unlawfully enter the country, establish a physical residence in the United States, and be absent from the United States on business or pleasure during a major portion of the three or five year period.

The application is denied, and petition dismissed.