**UNITED STATES v. SHAPIRO.**

No. 1875.

District Court, S. D. California,
Central Division.

March 30, 1942.

928

William Fleet Palmer, U. S. Atty., James L. Crawford, Asst. U. S. Atty., and John M. Gault, Asst. U. S. Atty., all of Los Angeles, Cal., for plaintiff.

Abraham Richmond, of Los Angeles, Cal., for defendant.

J. F. T. O'CONNOR, District Judge.

Can the United States of America cancel a certificate of citizenship issued to an alien, where the evidence discloses that the alien secured both a visa and a passport which had been issued to another person, and the alien represented herself to be that person?

This action is instituted under Section 338(a) of the Nationality Act of 1940, 8 U.S.C.A. § 738(a), to set aside and cancel the naturalization of Millie Shapiro as having been fraudulently and illegally procured.

The defendant, Millie Shapiro's petition for citizenship was granted on May 17, 1932, and certificate of citizenship No. 3,-495,680 was issued to her. The defendant was born in Varanowiczi, Russia-Poland on May 1, 1906, and her maiden name was Millie Phillips. She was contacted in Warsaw, Poland by one Shatsky who, for a consideration of $400, which was paid to him, secured for her a passport and a quota immigration visa, No. 5918, dated at Warsaw, Poland, February 1, 1926, both instruments having been issued to Raca Falkowicz. The defendant knew, at the time she received the visa and passport, that the same were not issued in her name or to her. The defendant continued to represent herself as Raca Falkowicz, and arrived in the United States on May 13, 1926, on the S. S. Reliance, and on the following day was married to Hyman Shapiro. The defendant's name appears in the marriage license as Raca Falkowicz and the marriage certificate is in the name of Raca Falkowicz, and, further, the defendant gave the date of her birth in her petition for citizenship as May 1, 1905, and signed the same, "Millie Shapiro", and further alleged that she lawfully entered the United States at the port on the date and vessel shown therein. Two children were born in the United States as the issue of this marriage.

Under the facts stated it is clear that defendant did not lawfully enter the United States, and that her naturalization was fraudulently and illegally procured in violation of Section 3 of the Act of June 29, 1906, 34 Stat. 596, 8 U.S.C.A. § 408, and the 4th subdivision of Section 4 of said 1906 Act, as amended by the Act of March 2, 1929, 45 Stat. 1513, 8 U.S.C.A. § 382; of the Act of September 22, 1922, 42 Stat. 1021, 8 U.S.C.A. § 367, and of Sections 2 and 13 of the Immigration Act of 1924, 43 Stat. 153, 8 U.S.C.A. §§ 202, 213. The defendant, therefore, did not legally reside within the United States for one year immediately preceding the filing of her petition for citizenship, and did not legally reside within the jurisdiction of the United States District Court for the Eastern District of New York; Brooklyn, New York, on February 11, 1932, when said petition for citizenship was filed.

Citizenship is granted to aliens not as a right, but merely as a privilege upon complying with all the provisions of the federal statutes. While "illegally" and "fraudulently" have different legal meanings, either way may be sufficient to cancel a certificate of citizenship. However, both elements are present in this case. United

States v. Beda, 2 Cir., 1941, 118 F.2d 458, 459.

The court said: "No alien has the right to naturalization unless he has complied with the statutory requirements. If a certificate of naturalization has been procured when the statutory qualification did not exist in fact it may be cancelled. Proof of fraud in obtaining a certificate is unnecessary to justify cancellation, illegality alone will subject a certificate to successful attack."

 Good faith, which means a fair and full disclosure of all of the facts by an alien to the immigration officials and to the courts, is required of every alien seeking one of the highest privileges that can come to an individual. Had the facts been disclosed to the United States District Court for the Eastern District of New York, it is clear that the citizenship certificate would never have been issued. United States v. Marcus, D.C.N.J.1932, 1 F.Supp. 29.

All of the statutory conditions and qualifications provided by Congress must exist and must be proved before citizenship can be granted. United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853.

 A declaration of intention was unnecessary in this case in view of the fact that the defendant's husband was a citizen of the United States. There seems to be no specific statute which provides that lawful entry is, in every instance, prerequisite to naturalization. There can be no question in this case but that there was no lawful residence in the United States, for the reason that the person who claimed to have resided in the United States for the statutory period was not the person whom the United States intended to admit. Title 8, U.S.Code, Section 382, 8 U.S.C.A. § 382, provides, in part, as follows:

 "No alien shall be admitted to citizenship unless (1) immediately preceding the date of his petition the alien has resided continuously within the United States for at least five years * * *." In United States v. Goldstein, D.C., 30 F.Supp. 771, 773, the court said:

"The term 'residence', as used in this Act, is 'legal residence', and anyone who enters this country illegally cannot thereby acquire a legal residence as a basis for application for citizenship. In re Scriver, D.C., 9 F.Supp. 478; Zartarian v. Billings, 204 U.S. 170, 27 S.Ct. 182, 51 L.Ed. 428; Kaplan v. Tod, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585; In re Jensen, D.C., 11 F. 2d 414, 415; Petition of Connal, D.C., 8 F.2d 374, 375. The use of a fraudulently procured passport to gain admission to this country is unlawful." United States v. Kreticos, 59 App.D.C. 305, 40 F.2d 1020; United States v. Parisi, D.C.Md.1939, 24 F.Supp. 414; In re Scriver, D.C.N.Y.1935, 9 F.Supp. 478.

 Entry into the United States by the use of a visa issued to one other than the entrant constitutes unlawful entry. In United States ex rel. Fink v. Reimer, D.C. N.Y.1936, 16 F.Supp. 487, affirmed, 2 Cir., 1938, 96 F.2d 217, certiorari denied 1939, 305 U.S. 618, 59 S.Ct. 78, 83 L.Ed. 395, the court held that an alien who obtained a preference quota visa by using the name of another person was subject to deportation. United States ex rel. Smith v. Curran, 2 Cir., 1926, 12 F.2d 636; United States ex rel. Thomas v. Day, 2 Cir., 1928, 29 F.2d 485.

It is manifest from the facts stated and the cases cited that the entry of defendant into the United States by the use of a visa issued, not to herself, but to another, constitutes an unlawful entry. It is well established that the use of a fraudulently procured passport to gain admission to this country is unlawful.

The historic policy of this country has always been liberal in permitting aliens to become citizens. It is not too much to ask of those who seek this highest of all privileges, that each petitioner comply with the requirements of the statute. The alleged facts upon which the court acted were not in existence. Discrepancies and falsifications were not at issue at the time the defendant's petition for citizenship was before the court, and the court had no opportunity to pass upon them.

 Absolute good faith must continue through every step of the proceedings of naturalization from the time the immigrant quota number is applied for until the oath of naturalization is taken. The alien makes a contract with the government of the United States. In return for the benefits and high privileges bestowed upon the alien, he makes a solemn agreement expressed in the oath required of all who become citizens. The oath requires as follows: "I hereby declare, on oath, that I absolutely and entirely renounce and

930

abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which I have heretofore been a subject or citizen; that I will support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I take this obligation freely without any mental reservation or purpose of evasion: So help me God. In acknowledgment whereof I have hereunto affixed my signature." 8 U.S.C.A. § 735.

There are four positive, definite, and unequivocal agreements. If the oath is taken without any intention of renouncing allegiance to a foreign government; or without any intention of supporting and defending the laws of the United States against *all enemies, foreign and domestic;* or without any intention to bear true faith and allegiance to the United States; or if the oath is not taken freely without any *mental reservation* or *purpose of evasion,* no one would seriously contend that the alien had, in reality, become a citizen of the United States. When Congress included the promise "to support and defend the Constitution and laws of the United States of America", it had in mind, no doubt, the elimination of so-called fifth and sixth columnists.

 Applicant must take the oath of allegiance in accordance with the terms fixed by law. United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302. Mental reservation. denial of citizenship. In re Roeper, D.C.Del., 274 F. 490. Alien refusing to take oath except "as my conscience as a Christian will allow" denied citizenship. United States v. Bland, 283 U.S. 636, 51 S.Ct. 569, 570, 75 L.Ed. 1319.

 Under the facts in the instant case, no oath was taken by Raca Falkowicz, with whom the government believed it was contracting, but by an entirely different individual, one Millie Shapiro, whose maiden name was Millie Phillips, but who entered the United States under the assumed and impersonated name of Raca Falkowicz. The defendant could not be considered as a person "attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States", as required by § 707, Title 8, U.S.C.A., nor could such person honestly take the oath which requires true

faith and allegiance to the laws of the United States without mental reservation, knowing her status was attained by violating the laws of the United States. "The determination of the right to admission to citizenship is one of the most solemn and important functions of the United States District Court." Weber v. United States, 9 Cir., 119 F.2d 932, 934. The court found that each applicant had not been attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States for the past five years. The Supreme Court of the United States on this day has affirmed the opinion of the Circuit Court of Appeals, Ninth Circuit, written by Judge Denman. 62 S.Ct. 911, 86 L.Ed. ——.

It is the judgment of the court that the certificate of citizenship issued to defendant, Millie Shapiro, and any and all copies thereof, be cancelled and declared null and void and the defendant, Millie Shapiro, is required to surrender up said certificate of citizenship No. 4,395,680 and she is forever restrained and enjoined from setting up or claiming any benefits or advantages whatever under said certificate.