## UNITED STATES v. CHARNOWOLA.

### No. 11469.

United States District Court
E. D. Michigan, S. D.
Jan. 22, 1953.

Kenneth Smith, Asst. U. S. Dist. Atty., Detroit, Mich., for plaintiff.

Goodman, Crockett, Eden & Robb, Detroit, Mich., for defendant.

PICARD, District Judge.

The United States of America presents its complaint under and pursuant to Section 338(a) of the Nationality Act of 1940, 54 Stat. 1158, Sec. 738(a), U.S.C.A. Title 8, to vacate an order conferring citizenship upon George Charnowola, defendant, and to cancel his certificate obtained January 28, 1946.

It is claimed that defendant procured his naturalization illegally and fraudulently by falsely stating to the examiners under oath following the filing of his petition

for citizenship, March 29, 1945, that he had never been a member of the Communist Party prior to the filing thereof.

At that time the Nationality Code of 1940 provided:

"No person shall hereafter be naturalized as a citizen of the United States — * * *

"(b) * * * who is a member of or affiliated with any organization, association, society, or group that believes in, advises, advocates, or teaches—

"(1) the overthrow by force or violence of the Government of the United States * * *

"The provisions of this section shall be applicable to any applicant for naturalization who at any time within a period of ten years immediately preceding the filing of the petition for naturalization is, or has been, found to be within any of the clauses enumerated in this section, notwithstanding that at the time petition is filed he may not be included in such classes." 8 U.S. C.A. § 705.

It must be remembered that defendant is not charged here with being a Communist either now or during the ten year period previous to March 29, 1945 but the gist of the action is the alleged false information which he gave the examiners under oath; to wit, claiming that he had never been a Communist when in fact he had been.

In this connection it is plaintiff's position that if, during those examinations, defendant had admitted his previous Communist membership back in 1925, and then claimed that he had abandoned such affiliation more than ten years previous to the time of the filing of his petition that he would not necessarily have been denied citizenship. This, plaintiff explains, is true because it is the recognized practice of the Naturalization Department to present such "border-line" cases to the district court for individual determination. Therefore all former Communists were not automatically barred from citizenship under the 1940 Act but all who had been Communists within the ten-year period previous

to the filing of their petition were denied citizenship by the above section. (The McCarran-Walter Act, June 27, 1952, Public Laws 414, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq., has not been interpreted by our courts.)

But interpretation of the 1940 law applicable may be found in any number of cases and two citations will serve.

In Orth v. United States, 4 Cir., 142 F.2d 969, 970 the court said:

"American citizenship is a priceless possession, and one who seeks it by naturalization must do so in entire good faith, without any mental reservation whatever, and with the complete intention of yielding his absolute loyalty and allegiance to the country of his adoption. If he does not, he is guilty of fraud in obtaining his certificate of citizenship."

And in United States v. Ginsberg, 243 U.S. 472, 475, 37 S.Ct. 422, 425, 61 L.Ed. 853, where our Supreme Court said:

"No alien has the slightest right to naturalization unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it as provided in § 15 and demand its cancelation unless issued in accordance with such requirements."

In other words, every applicant for citizenship in this country must come in with clean hands. There can be no fraud in the securing of that citizenship, whether that fraud be failure to disclose what it is obvious must be material or be an outspoken misrepresentation. Under some circumstances silence may be as reprehensible as a false statement. But while the courts, through their decisions, lay down rigid compliance with the law for obtaining citizenship, on the other hand, once citizenship is obtained, the courts as jealously guard the revoking thereof, for it has been held in many cases that evidence to revoke must be "clear, unequivocal, and convincing". See Schneiderman v. United States, 320 U.S. 118, 63

S.Ct. 1333, 1341, 87 L.Ed. 1796, and Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500.

 This was the burden of the government in this case, to accomplish which it produced three witnesses, self-acknowledged former Communists, who claimed to have been comrades of defendant while he was a member of the Communist Party back in 1925. There were also some exhibits and minutes of a meeting of "Branch No. 5, Ukrainian Federation, Workers Party of America" which the witnesses claim was a unit of the Workers (Communist) Party. While this documentary evidence might be questioned it was merely corroborative of the evidence that had preceded and if entirely eliminated from consideration would still leave proof that the Workers Party of America, to which defendant belonged, was a Communist organization. The fact that the word "Communist" did not appear in the minutes by which the witnesses refreshed their memory is not fatal since it was explained that it was part of the then "tactics" of the Communist Party of Russia that the word "Communist" was not to appear in any of the proceedings in this country. There is proof that the real name of the Workers Party was Workers (Communist) Party with the word "Communist" in parenthesis.

While counsel for defendant easily confused the witnesses on matters that might under some circumstances raise the question of credibility he was unable to confuse or eliminate from their testimony the claim that they had been Communists and that the defendant had been a Communist at the same time. These men were not educated and it was apparent that many times they didn't understand the questions. But when they testified concerning the minutes of the Workers Party you were compelled to believe that their evidence was of solid quality; that it was "clear, unequivocal, and convincing" and that the defendant had been an active, dues paying member of the Communist Party at least at some time prior to the day he filed his petition to become a citizen of these United States. No evidence contra being produced, defendant might still be a member of the Communist Party.

Defendant also insists that there is no evidence that the Communist Party is per se illegal or that being a member thereof makes one an advocate of overthrowing this government by force and violence. For years the Communist Party has been in disrepute in this country. The land of its parent domicile was accepted during the war as an ally but the credo and ideology of Communism was never accepted. Some well-intentioned people may have had doubts as to what that credo was but not the members of the Communist Party themselves. Both here and in Russia it is now apparent that at all times the Communist Party aimed to destroy America by force and violence. And perhaps those who had any doubt based it on what they thought was the Communists' lack of strength to attain an objective so hostile to our theory of government.

As stated in Dennis v. United States, 341 U.S. 494, at page 498, 71 S.Ct. 857, at page 861, 95 L.Ed. 1137:

"and the statements and activities of its leaders, petitioners here, advocate, and the general goal of the Party was, during the period in question, to achieve a successful overthrow of the existing order by force and violence."

accepting the Court of Appeals' findings that the record of the District Court supported those conclusions as to what Communism meant to us.

This court also in Albertson v. Millard, D.C. 106 F.Supp. 635, at page 646 referred to Blau v. United States, 340 U.S. 159, 161, 71 S.Ct. 223, 224, 95 L.Ed. 170, which holds that one admitting to be in the employ of the Communist Party or having intimate knowledge of its workings could reasonably fear "that criminal charges might be brought against her * * *". However, the significance of one's failure to divulge membership in the Communist Party when questioned by the examiners is emphasized by none other than defendant himself who when he was asked whether or not he had ever been a Communist, declined to answer

the question on the ground that his answer might tend to "incriminate him." Here was an admission in open court that to be a Communist was incriminating. Therefore the answer to the question asked by the examiners must have been material and, by reasonable deduction, proof—if such proof is necessary—that to be a Communist one must have aims hostile to this country. It was a question that defendant should have answered truthfully and we hold that he did not. Therefore defendant became a citizen of the United States by fraud.

His certificate of citizenship should be and is hereby revoked and cancelled.