**UNITED STATES of America,**
**Plaintiff,**
**v.**
**Michael CHRUSZCZAK, Defendant.**
**Civ. A. No. 28063.**

United States District Court,
N. D. Ohio, E. D.
July 9, 1954.

Sumner Canary, Dist. Atty., Eben Cockey, Asst. Dist. Atty., Cleveland, Ohio, for United States.

Max B. Katz, Cleveland, Ohio, for defendant.

JONES, Chief Judge.

The Government seeks to set aside the order admitting the defendant to citizenship and to cancel his certificate issued thereon.

It is the Government's claim that in proceedings leading up to his naturalization the defendant failed to mention membership or activities in the Communist Party of the United States when registering as an alien under the Act of 1940 on November 13, 1940; and in his petition for naturalization on November 14, 1940 he falsely alleged that he was well disposed to the good order and happiness of the United States and attached to the principles of the Constitution of the United States; and that he took the oath of renunciation and allegiance when the fact was that he had been for a period within five years next preceding the filing of his petition, a member of or active in the affairs of the Communist organization; distributing its literature and making financial contributions to the Party; that the defendant's false statements in respect thereto were deliberately and intentionally made, thereby preventing the making of investigation of his qualifications for citizenship; and concealing his lack of attachment to the principles of the Constitution; all of which resulted in his procuring his citizenship illegally and fraudulently.

Averments of defense are, first, that belief in political philosophy of the Communist Party within the five years next preceding defendant's citizenship, and failure to disclose any such political belief would not constitute fraud, would not be illegal and ought not to be grounds for revoking his citizenship since, during such period, the Communist Party was recognized as a lawful political party, appearing on the official ballot; second, the defendant answers that he was without knowledge as to whether the organizations with which

he was affiliated had any connection with the Communist Party; denies that he was a member of the Communist Party, or of any organization devoted to furthering the activities of a foreign government; further denying that the statements in his petition were false; denying that the oath taken by him was other than an honest intention to renounce all allegiance and fidelity to any foreign government; denies that he distributed literature or made financial contributions to the Communist Party; denies all charges of the Government that he was not attached to the principles of the Constitution or well disposed to the good order and happiness of the United States.

It is the law that no person may be naturalized who believes in, advises, advocates or teaches, or who is a member of or affiliated with any organization, association, society or group that believes in, advises, advocates or teaches, the overthrow, by force or violence, of the Government of the United States. Title 8 U.S.C.A. § 705.[1] If these provisions, or any of them, apply to the facts in the defendant's case he was not eligible for naturalization and if he failed to make disclosure during his examinations in respect of his membership in a subversive organization, his citizenship would not only be illegal, but fraudulently obtained. Title 8 U.S.C.A. § 738.[2] United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853; Id., 8 Cir., 1917, 247 F. 1006; Orth v. United States, 4 Cir., 1944, 142 F.2d 969, at page 970. United States v. Chomiak, D.C.Mich.1952, 108 F.Supp. 527 and United States v. Charnowola, D.C.Mich.1953, 109 F.Supp. 810, both affirmed, 6 Cir., 1954, 211 F.2d 118.

The naturalization examiners Stapenhorst and Ewing testified as to the preliminary examinations of the defendant, under oath, in November of 1940. While they did not recall if the defendant was asked if he was a member of the Com-

munist Party, yet, he did not include such membership in the statements as to organizations to which he did belong. They testified that such information would have been a factor of rejection and evidence of a lack of attachment to the Constitution calling for further examination and investigation.

Martin Schofield and Leo Jarenko, investigators for the Immigration Service, testified with respect to their interviews with and written statements of the defendant in February and September of 1950. In these statements the defendant made voluntary disclosure of his membership and activities in the Communist Party. Both witnesses testified that the defendant was fully advised of his rights; the statements were made under oath and signed by him; and while they did not know if he was able to read, he did not manifest any lack of understanding of the questions put and the answers given.

Charles Baxter, a consultant to the Immigration Service, a United States citizen but a former member of the Communist Party from 1927 to 1945, joined as a seaman under the I.W.W. He left the United States in 1929 and went to Russia as a delegate to the Red International; was there about a year, attended the Lenin School, returned to the United States in 1930, going to the west coast for two years. He testified as to the duties of Party officers underground; was well versed in all the communist literature published and distributed from 1931 to 1945. After identifying many publications offered in evidence he testified as to his familiarity with them, stated that they were all of the same tenor and that the principles, aims, purposes and objectives advocated the revolutionary overthrow of the United States Government by force and violence.

Lowell Watson, a United States citizen, employed by the Government as a consultant with the Immigration Serv-

1. Now 8 U.S.C.A. §§ 1424(a–c), 1427(f), 1451(c).

2. Now 8 U.S.C.A. § 1451(a–e) (g–i).

ice, had been a member of the Communist Party from 1929 or 1930 to 1942. He had been a County organizer in Toledo, came to Cleveland in 1933–1935; participated as a unit organizer in the Cuyahoga County committee. He went to West Virginia for two years, returning to Cleveland the latter part of 1936, where he was active until about 1941. He testified that he knew the defendant as "Mike Childs" and identified him as one active in communist work, meeting him first in Euclid Village in the spring or summer of 1934; that the defendant attended meetings with some regularity, was an active participant in the discussions; saw him and was at his home frequently until the last part of 1939; that he had had personal discussions with the defendant many times; that the aims and purposes of the Communist Party were discussed at the meetings which the defendant attended and that he, the defendant, appeared to be well versed in Party aims; that the defendant was called "Comrade Mike"; carried a membership book for insertion of dues stamps and made financial contributions and distributed literature of the Party.

Defendant's testimony, particularly on direct examination, was largely a categorical denial of the charges made by the Government, and lack of knowledge of the Communist Party and its aims. He further testified he never had belonged to the Communist Party and never had believed in any organization designed to overthrow the Government. He stated that he thought the meetings were about unemployment and relief.

■ Under a fair appraisal of the Government's evidence it must be concluded that the Communist Party in the United States was, and is, a revolutionary organization, the principles, aims, purposes and objectives of which call for the overthrow of the Government by force and violence; and that these were its aims and objectives during the years when the Government charges that the defendant was a member and

actively participated in its organization discussions, meetings, and dissemination of its literature.

True, in those years it professed a political party status and had not yet been outlawed by legislation but, under the effective proofs here the Party in the United States, and with which it is charged the defendant was associated and actively participated in, was something vastly different from a political organization,—it is not what it professed to be, but what it really was, that is controlling.

Coming now to the question of defendant's membership, association with and participation in the Party activities within the five years next preceding the filing of his petition, the testimony of Watson, if believed, clearly established such connection. But Watson, then an active communist, well might be regarded as in a criminal case, as one who has turned state's evidence, or as an accomplice, and therefore one whose evidence should require support, or corroboration by other evidence of a credible character. Perhaps, standing alone, the court well might regard Watson's testimony as insufficient to establish the Government's case; but the testimony of Schofield and Jarenko, together with statements of the defendant taken by them and tendered in evidence, abundantly support and corroborate the evidence of Watson as to defendant's activities and participation. The defendant's professed ignorance of the matters and lack of understanding exhibited in his direct examination had all the characteristics of those who feign ignorance and lack of understanding when faced with evidence of wrongful conduct in an effort to escape the consequences. Upon his cross-examination he seemed much more apt in understanding and developing his activities than in direct examination; in fact, his activities were developed to such an extent in his own testimony as to confirm the truthfulness of the voluntary statements made by him to the investigators, as well as much of the participation and ac-

tivities testified by Watson, although he did protest that he did not knowingly engage in communistic or other activities which were designed for the violent overthrow of the Government.

The evidence of defendant's membership in the Communist Party in 1943 subsequent to his admission to citizenship in 1941, although not controlling on the issues here, does give support to and is persuasive as to his activities and participation in the years in question prior to his admission, and also gives strong support to the charge that he was not attached to the principles of the Constitution and not well disposed to the good order and happiness of the United States when he took the oath of allegiance.

He was given adequate opportunity in his examinations before the examiners to have disclosed his connections, whether or not he understood the real purposes of the organization in which he admittedly participated. Had he done so he either would have been rejected as an applicant for citizenship, or would have been further investigated and examined. United States v. Shapiro, D.C.Cal.1942, 43 F.Supp. 927; United States v. Sweet, D.C.Mich.1952, 106 F.Supp. 634, affirmed, 6 Cir., 1954, 211 F.2d 118.

It would put a low estimate on the standards and requirements of knowledge of our form of government and its constitutional principles to have passed him for citizenship in 1941, and now accept the defendant's professed ignorance and lack of knowledge of the aims and purposes of the organization in which he was active during the years in question.

Now to hold that because he had no knowledge of what the Party organization stood for, he was under no obligation to disclose it would put a light value on the privilege of citizenship and be a tax on credulity.

Certainly under the facts it is clear that the defendant was not attached to the principles of the United States Constitution or well disposed to the good order and happiness of this Country, when he filed his petition and obtained his citizenship.

Upon a careful consideration and review of the facts and the law I think the Government has made out its case by clear unequivocal and convincing evidence that the defendant obtained his papers illegally and fraudulently, and an order may be entered vacating, setting aside his admission, and cancelling his certificate. Schneiderman v. United States, 1943, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796; Id., 9 Cir., 119 F.2d 500; Sweet v. United States (Chomiak v. United States, Charnowola v. United States), 6 Cir., 1954, 211 F.2d 118.

Findings and conclusions may be filed as summarized at the conclusion of the Government's brief.