**UNITED STATES ex rel. MURPHY v. McCANDLESS, Immigration Com'r.**

**No. M–242.**

District Court, E. D. Pennsylvania.

May 19, 1930.

Adrian Bonnelly, of Philadelphia, Pa., for plaintiff.

Calvin S. Boyer, Acting U. S. Atty., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

This case presents the difficulty often presented between the enforcement of immigration laws which voice a policy not only wise in itself but necessary to the well-being of our country, and the hardship which thereby presses upon the individual subject to the provisions of the law.

The relator is a young woman of Irish birth, in no way objectionable from the standpoint of an immigrant or a prospective citizen. There was, however, at least an irregularity in the mode and manner of her admission to the country. Had she made application in accordance with the requirements of the law, no obstacle to her admission here would have arisen, so far as now appears. Unfortunately she took another course. The relator's correct name is Maggie Agnes Murphy. She had a sister whose name was Delia. Transportation to this country had been provided for the sister through a steamship ticket being issued in her name. It was decided, for family reasons, that Delia should not emigrate, but her sister Maggie, the relator, should come to this country in her place and stead. Any one familiar with the Irish view of the family relation can readily understand why in this respect, innocently enough, the relator took her sister's place. At all events, she did so, impersonating the sister throughout. This was nearly five years ago. The consequence was that she was visited at the place at which she was at work and interrogated, making frank answers to the questions asked her. This was followed by her being taken before the immigration officials and an order of deportation was issued. On the eve of the execution of the order of deportation, the present writ was sued out.

A preliminary question is raised which may forestall a ruling on the merits of the final question. This preliminary question can most clearly be presented by a reference to the acts of Congress. An alien who has entered this country in defiance of the immigra-

tion laws is a proper subject of a deportation order. In the type of cases before us the provision of the act of Congress is that the alien "shall upon the warrant of the Secretary of Labor be taken into custody and deported." The regulations following the act recognize a "warrant of arrest" and an "Order of Deportation." The regulations in much detail prescribe the requirements of an application for a warrant of arrest and provide for a hearing. "Upon a telegraphic or written warrant of arrest the alien shall be taken before" the official designated, "and (be) granted a hearing to enable him to show cause" against deportation, and "at the beginning of the hearing under the warrant of arrest the alien shall be allowed to inspect the warrant of arrest and all the evidence on which it was issued," and be allowed counsel.

In the instant case there was no compliance with the requirements of either the law or the regulations. The relator was taken from her place of work by an inspector or other official, with no other authority than his own will, was interrogated by him, and upon the evidence thus obtained was kept in custody until an order of deportation was made out. There was, of course, no discourtesy shown other than the act of arrest and detention, but the "mild mannered" methods employed do not change the truth that the arrest and detention were wholly without authority of law.

The dissenting opinion of Judge Anderson, in the case of Charley Hee v. U. S. (C. C. A.) 19 F.(2d) 335, 336, was cited to us as authority for the proposition that any unwarranted arrest and detention of an alien vitiated an order of deportation which followed the unlawful custody. It was authority because the trial court had refused to discharge such alien (Judge Anderson dissenting), and the Supreme Court had reversed the trial court without opinion, thus adopting the dissenting opinion as an expression of the grounds of reversal. Such an interpretation of the ruling of the Supreme Court was wholly unwarranted, as counsel for the United States has made clear. The ruling of the court, however, is of value. "The arrest and the ensuing imprisonment before the issue of the warrant were plainly illegal." The legal situation is said to be "similar to the practice under the Immigration Act." The relator there was denied the benefit of the principle laid down solely because no seasonable claim was made for relief. The dissenting opinion expressed the only difference among the judges. This was over, not the

right, but the waiver. Judge Anderson's view is to be looked for in the emphatic sentence, "It is high time to insist that law-enforcing officials be law-abiding in the performance of their official duties." The court unanimously voiced condemnation of the wrong done. The majority held the relator had waived the right which the court held to be his. Judge Anderson's dissenting view was thus expressed, "The way to stop such gross invasion of fundamentally important human rights is to refuse to affirm decisions grounded thereon." It is clear therefore that had the right been seasonably asserted it would have been allowed. It was lost only because it was waived.

■ Here there has been no waiver and the right must be given effect. The relator is charged with a failure to observe the immigration laws; she is sought to be condemned by another violation. This is what should not be permitted. This means that the relator must be discharged because subjected by unlawful means to the deportation order.

The relator is discharged without day.