**UNITED STATES ex rel. LEIBOWITZ v. SCHLOTFELDT, District Director of Immigration and Naturalization.**

No. 6153.

Circuit Court of Appeals, Seventh Circuit.

Jan. 19, 1938.

Michael L. Igoe, U. S. Atty., and A. Bradley Eben, Asst. U. S. Atty., both of Chicago, Ill., for appellant.

Martin Weisbrod and Harry J. Busch, both of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from an order, in a habeas corpus proceeding, discharging appellee from the detention and custody of appellant, where he was by reason of a deportation warrant issued on the grounds that appellee, as an alien, entered this country without an unexpired quota immigration visa as required by law. Section 213 (a), title 8, U.S.C.A.

Appellee was born on December 28, 1898, in Kuldiga, Latvia, and was given the name of Leib Leibowitsch. From 1915 until 1919 he was in Russia, serving a part of that time in the Russian Army. He then returned to the place of his birth and later moved to Riga, Latvia, where he remained until 1923. During this period his native land was in a state of civil warfare and he, like others of similar age, in order to escape military service in the revolutionary army, applied to the Department of Registry for a birth certificate in his brother's name of Feive and presented himself to the military authorities under such name and age. Men were called for service who were born between 1895 and 1899, and his brother Feive was born in 1891. It is said by appellant that appellee assumed his brother's name and age in order to avoid being drafted in the army of his "native country." Due to the confusion existing on account of the civil war then in progress, it is difficult to determine from the record just what his "native country" was. In fact, it appears he was a man without a country. It seems plain, however, that he took this action to avoid military service, but whether it was from his "native country" or some other country, we need not determine.

After his return to his native land in 1919, appellee continuously used the name

of his brother. Under that name he was issued a permit by the Latvian government in 1921 granting him the right to operate a tannery. The same government issued him a passport which was used in his travels of various countries. He did business under and was known by that name until his entry into the United States. In 1923 appellee made application for a quota visa from the American consul in Riga, at which time he stated that his name was Feive Leibovitsch and that he was born May 28, 1891.

July 28, 1927, a quota immigration visa, signed by the American consul at Latvia, was granted appellee after he stated under oath that his true name was Feive Leibovitsch and that he was born in 1891. Armed with this visa and a Latvian passport, he proceeded to the United States, entering at Ellis Island September 16, 1927.

November 30, 1927, at Rock Island, Ill., appellee, under the name of Leibe Faive Leibovitz, filed a declaration of intention seeking citizenship.

In February, 1928, he traveled to Latvia after obtaining a re-entry permit under the name of Feive Leibovitz, returning to the United States October 5, 1928, when he secured admission by virtue of such permit. Since then, he has continuously resided in this country.

In 1934, he applied for his certificate of naturalization and at that time disclosed to the examiner the circumstances relative to the confusion as to his name. After an investigation by the Department of Labor, a deportation warrant was issued and appellee arrested as above related. Appellee's explanation for stating the assumed name and age in connection with the obtaining of the visa from the American consul was to the effect that, inasmuch as he had continuously used that name and age for many years and being possessed of a Latvian passport under such name, to have stated differently would have resulted in complications and delay, and that in so stating he had no purpose or intention of committing a fraud upon this government and especially upon our immigration laws.

The record discloses no reason why appellee would not have been entitled to a quota visa if his correct name and age had been stated; in fact, counsel for the government concede as much and no question is raised affecting his right to enter this country as a quota immigrant other than the false statements made in connection with the obtaining of the visa.

The legal question thus involved is: Was appellee's original entry under such circumstances, legal? Under section 213 (a), title 8, U.S.C.A., no immigrant of the class of the appellee is to be admitted into this country unless he presents a proper immigration visa. That he presented a visa regular on its face is conceded, but it is claimed by the government that the misrepresentation made by appellee as to his name and age in obtaining the visa was of such a fraudulent nature as to vitiate the same, and that appellee is in a position no different than an immigrant who has entered without such a document.

Section 207 (b), title 8, U.S.C.A., sets forth numerous requirements which shall be contained in an application for an immigration visa, among which are: The immigrant's full and true name; age, sex and race, and the date and place of birth.

The answer to the question presented cannot be given as readily as might first appear. A large number of cases have been cited in support of the opposite contentions as made by the respective parties. The case most favorable, perhaps, to appellant is that of U. S. ex rel. Murphy v. McCandless, D.C., 40 F.2d 643 (affirmed 3 Cir., 47 F.2d 1072), wherein an immigrant assumed the name of her sister in securing a visa. The reason given for impersonating her sister was that the latter had secured a steamship ticket to the United States and it was decided that the immigrant should come to this country in her stead. The court held the immigrant was subject to deportation. There is this distinction between that case and the present one, in that in the cited case the impersonation was assumed for the express purpose of entering this country, while in the present case the visa obtained by appellee was under a name and identity long before established.

Appellant also relies upon the cases of Popa v. Zurbrick, 6 Cir., 45 F.2d 583; U. S. ex rel. Thomas v. Day, 2 Cir., 29 F. 2d 485, and Heizaburo Hirose v. Berkshire, 9 Cir., 73 F.2d 86. In each of these cases it was held that the immigrant was liable to deportation because of the false and fraudulent statements made in obtaining a passport visa. In the Popa Case the immigrant falsely stated he was a student for the ministery; in the Day Case that he was already domiciled in the United

States; and in the Heizaburo Hirose Case that for two years prior to his application he was a priest. In all these cases, it will be noted the false statements were the basis for the issuance of a nonquota visa which could not have been otherwise obtained. Such authorities carry very little, if any, weight in support of appellant's contention here, in view of the fact that the visa could have been obtained just as readily if the truth had been stated.

Of the cases relied upon by appellee, that of U. S. ex rel. Iorio v. Day, 2 Cir., 34 F.2d 920, is perhaps the most nearly in point. One of the questions there considered was whether a false statement made in connection with the application for visa was grounds for deportation. In reaching a negative conclusion, the court on page 921 of 34 F.2d said: "The statute does not make it a ground for deportation that the alien has made a false oath upon his application for a visa or used it to get in. * * * It is true that the relator was bound to tell the truth on his application, but, if what he suppressed was irrelevant to his admission, the mere suppression would not debar him. Doubtless it might be made to do so, but we cannot find that it has been. So the first question comes down at most to whether the facts, had he disclosed them, would have been enough to justify the refusal of a visa or exclusion upon entry."

The same court in U. S. ex rel. Lamp v. Corsi, 2 Cir., 61 F.2d 964, again distinguishes between fraudulent misrepresentation and that irrelevant to the right of admission. On page 965 of 61 F.2d it is said: "It was not the concealment of irrelevant matter as in United States ex rel. Iorio v. Day (C.C.A.) 34 F.2d 920; nor in the face of this positive evidence of fraud can the prima facie validity of a re-entry permit (see United States ex rel. Iodice v. Wixon (C.C.A.) 56 F.2d 824) be accorded this one. The permit fraudulently obtained by the alien was in law no permit at all, and gave him no right to entry. As he has not proved that he was otherwise entitled to enter and the burden of proof is upon him (8 U.S.C.A. § 221; United States ex rel. Polymeris v. Trudell, 284 U.S. 279, 281, 52 S.Ct. 143, 76 L.Ed. 291), he is now unlawfully here."

Other cases might be cited where the distinction has been made between misrepresentation which enable the immigrant to obtain admission and where such right was not thus dependent. In the former, such misrepresentation has generally been termed a fraud and ground for deportation, while in the latter it has been treated as irrelevant and as not constituting such ground. This court, along with the courts generally, was not in agreement upon a somewhat similar situation, as is disclosed in United States ex rel. Volpe v. Smith, 7 Cir., 62 F.2d 808, 809. The question there considered was: "Does an alien enter the United States without inspecttion within the meaning of the statute (8 U.S.C.A. § 155) subjecting him to deportation therefor, when he falsely states to the immigration inspector upon reentry that he is a naturalized citizen of the United States and thereby avoids further interrogation by the inspector?" A divided court answered the question in the affirmative. While the question was not the same as here presented, we think the language of Judge Evans is significant. On page 811 of 62 F.2d it is said: "It was not one that went to a matter of detail—an incident in the officer's examination of the applicant. It was not merely a case of the applicant's falsifying. The falsification went to the vitals of any inspection. If appellant were a citizen of the United States, there was no inspection required. In fact, the inspector would have offensively exceeded his authority had he inspected a citizen after satisfying himself that the entrant was a citizen. Only inspection of aliens was necessary. The preliminary inquiry into appellant's citizen status was a requisite to determine whether any inspection was needed. Appellant's deception, therefore, was of a nature which resulted in the avoidance of an inspection."

Thus the court concluded, as a result of the falsification, the applicant had avoided inspection. If such false statement had been of an irrelevant nature, the conclusion reached might have been different. It is also to be observed, in connection with the language used, that section 155, title 8 U.S.C.A., expressly provides for the deportation of an immigrant who enters without inspection.

In the instant case we are unable to find any such express provision applicable to the ground on which the deportation is sought. Congress could well have made such provision had it so intended. We reach the conclusion, under the circumstances presented, that no fraud was

intended, and, as a matter of fact, none was perpetrated on this government by appellee in obtaining his immigration visa. Whether the use of such name and age enabled him to escape military service in some other country, we are not directly concerned. He was within the quota provision, could have obtained his visa by stating his correct name and age, and otherwise met the prescribed requirements to enable him to effect a legal entry. Therefore, the misrepresentations complained of were irrelevant and do not constitute grounds for deportation.

Order affirmed.