**Elsa CLARKE, Petitioner,**

**v.**

**Herman R. LANDON, as he is District Director of Immigration and Naturalization, Department of Justice, at Boston, Massachusetts, Respondent.**

**Misc. Civ. No. 56-4.**

United States District Court
D. Massachusetts.

Feb. 15, 1956.

Edward O. Gourdin, Boston, Mass., for petitioner.

Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for respondent.

WYZANSKI, District Judge. (dictated from the bench)

This case comes before me upon an Application for a Writ of Habeas Corpus. I shall deliver an oral opinion extemporaneously from the bench. The ultimate issue is whether the petitioner is

subject to deportation in view of the fact that she admits, and the record before the immigration authorities plainly proves, that at the time of her original application for an immigration visa, made at the American Embassy at San Jose, Costa Rica, she knowingly, in response to Interrogatories 18 and 27, stated that she was single and had no spouse to name when in fact at the time she gave those answers, she well knew that she was married to Webster Clarke, a citizen of Jamaica. Stated succinctly, the position of the respondent is that since the petitioner made a false statement knowingly and since such statement is made, in the respondent's view, criminal as a result of the provisions of U.S.C. Title 18, Section 1546, and, in the respondent's view, is also a ground for the denial of admission into the United States as a result of subsection (a) (19), Section 1182 of Title 8 U.S.C.A., and, in the view of the respondent, was a material misrepresentation because it thwarted an investigation which might otherwise have been made by the Immigration Authorities, the petitioner is subject to mandatory deportation. On the other hand, the petitioner asserts that though the deliberate failure to disclose her spouse was a violation of the regulations and of the statutes, it was an immaterial violation, for as the petitioner points out even M. John Mollica, the Special Inquiry Officer of the United States Department of Justice, conducting on April 20, 1955, a hearing in Elsa Clarke's case, admitted that "the respondent would have been entitled to a non-quota visa had she given her married name", and in the view of the petitioner this is an admission by a Government official that indeed whatever other consequences there may have been of the misstatement, it cannot properly be regarded as a material misrepresentation constituting a fraud of the type which authorized the Government originally to exclude, and now authorizes the Government to deport, the petitioner.

Were this a question of entirely fresh impression without a long legal history based upon judicial decisions interpreting earlier statutes, I confess that I might be persuaded by the Government's contention. For when one does make a misrepresentation deliberately to a governmental agency, it is, of course, ordinarily treated as a crime, even though the Government is not damaged. And it would not be unexpected if Congress were to say that one who has engaged in such criminal conduct is subject to deportation even though there has been no victimizing of the Government, no damaging of it, of the type ordinarily involved in actions of fraud arising outside the criminal law.

But whatever I might have concluded were the matter entirely fresh, I feel constrained to interpret the present law in the light of earlier decisions of great authority which it does not appear to me, from any legislative history so far disclosed, that Congress ever intended to override when it codified and restated parts of the immigration law.

In 1929, in United States ex rel. Iorio v. Day, 34 F.2d 920, the Second Circuit was faced with the question whether under the Immigration Law as it then stood Iorio was deportable on the ground that he had made in his application for a visa a false oath in that he had stated "that he had never been imprisoned" when in fact he had been imprisoned but for offenses which did not in the view of the Second Circuit represent crimes involving moral turpitude. Writing for the Court, Judge Learned Hand said that the misrepresentation was not a ground for deportation. At page 921, he said:

"The statute does not make it a ground for deportation that the alien has made a false oath upon his application for a visa or used it to get in. It is wrong to say in such a case that he came in without inspection, or in violation of law. It is true that the relator was bound to tell the truth on his application, but, if what he suppressed was irrelevant to his admission, the mere suppression would not debar him. Doubtless it might be made to do so, but we

cannot find that it has been. So the first question comes down at most to whether the facts, had he disclosed them, would have been enough to justify the refusal of a visa or exclusion upon entry."

In 1938, in United States ex rel. Leibowitz v. Schlotfeldt, 94 F.2d 263, the Seventh Circuit reached substantially the same conclusion as did the Second Circuit in the case just cited. There what happened was that the realtor at the time of his application for an immigration visa gave to the consular authorities the name and age of his brother instead of himself. The Seventh Circuit pointed out that "The record discloses no reason why appellee (that is the realtor) would not have been entitled to a quota visa if his correct name and age had been stated". (At page 264.) And in conclusion, at pages 265 and 266, Judge Major said:

"We reach the conclusion, under the circumstances presented, that no fraud was intended, and, as a matter of fact, none was perpetrated on this government by appellee in obtaining his immigration visa. Whether the use of such name and age enabled him to escape military service in some other country, we are not directly concerned. He was within the quota provision, could have obtained his visa by stating his correct name and age, and otherwise met the prescribed requirements to enable him to effect a legal entry. Therefore, the misrepresentations complained of were irrelevant and do not constitute grounds for deportation."

If there is something to the contrary in the decision by the Third Circuit in McCandless v. United States ex rel. Murphy, 47 F.2d 1072, reviewing United States ex rel. Murphy v. McCandless, D. C.E.D.Pa., 40 F.2d 643, Judge Major's distinction given at 94 F.2d at page 264, may seem to others satisfactory.

 As the above authorities indicate, it was apparently well settled by tribunals of distinction that misstatements in the application, even if knowingly made, were not to be regarded as grounds for deportation in the absence of a showing that the misstatements were prejudicial to the Government in some other sense than that they hampered a complete and full investigation. If the concealed fact were disgraceful or embarrassing or likely to involve some local difficulty in the country of origin, the Courts tended to treat such concealment as no ground for deportation if it were clear that had the concealed fact been disclosed the attitude of the American admitting authority would have been the same. The reason for this attitude is quite obvious. Many persons called upon to disclose their full life, and not certain whether they will be admitted to the United States, may at the time they are appearing before the Consul keep back events or facts which will or might get them into trouble with their relatives or the authorities in the country of their origin. Unless the concealment does real harm to the United States, it is a very harsh rule that provides for the deportation of the alien long after he has been admitted on the ground that he did not make this disclosure. To sanction deportation under these conditions is often (as it may have been in this case) a spur to the malice, envy, spite, or worse motive of someone in the country of origin, who has no other purpose than to cause discomfort to the person newly admitted to the United States and who is not in the least solicitous about the welfare of this country, but only seeks to impose suffering on the recently admitted immigrant.

Congress, when it reenacted the Immigration and Nationality Law, so far as this Court is informed, was not inclined to be less merciful than the Second Circuit or the Seventh Circuit. It did not seek to reverse by legislative fiat the judicial determinations theretofore made. It is true that Congress did provide that there should be criminal sanctions in connection with a fraudulent misstatement in applications for visas. 18 U.S. C. § 1546, provides that "whoever knowingly makes under oath any false state-

ment in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder—

"Shall be fined not more than $2,000 or imprisoned not more than five years, or both." But no one knows whether the Supreme Court of the United States would read this statute so literally as not to imply that the word "material" should be inserted between the word "any" and the word "false". In short, even the criminal statute might be so interpreted in this particular situation to reach only those false statements which are material. Unless we could be sure what the criminal law would be interpreted to mean, we certainly cannot lift ourselves up by means of that into a stricter interpretation of the immigration statutes than has ever prevailed. And even if the criminal law did reach immaterial as well as material false statements, it would not as a matter of policy necessarily follow that the deportation statute would be read *in pari materia* with the criminal law.

■ In short, in this particular case, where Mrs. Clarke did in fact knowingly falsely state that she was single. when in truth she was married, her statement, perhaps chiefly motivated by fear of her spouse from whom she was separated, not only is not shown to be a material misstatement, but plainly was an immaterial misstatement since in any event she was admissible to the United States.

On the whole, what one gets from reading this very squalid record is the impression that the authorities at a much lower level of administrative personnel who examined her were seeking by various unpleasant questions to create a cause of deportation against her. There is something so revolting and shameful about the type of interrogation to which she was subjected that this Court will do no more than state its disapproval without defiling the record by repeating purient questions. The petitioner is enlarged from the custody of the respondent.