MATTER OF C——

In DEPORTATION Proceedings

A-11659714

*Decided by Board May 31, 1960*

**Discretionary relief—Section 211 (c) and (d)—Not granted where alien on notice that marriage would invalidate preference visa.**

Section 211 (c) and (d) waiver will not be exercised in favor of 20-year-old Italian girl who was married a few days before departing for United States after having signed statement in Italian and English (attached to her third preference quota visa) placing her on notice that marriage prior to entering the United States would invalidate the visa.

CHARGE:

Order:  Act of 1952—Section 241(a)(1)  [8 U.S.C. 1251(a)(1)]—Excludable at entry as not of proper status under quota specified in immigrant visa under section 211(a)(4).

## BEFORE THE BOARD

**Discussion:** Respondent is 20 years old, married, female, a native and citizen of Italy. Her only entry into the United States was at New York on April 20, 1959, at which time she was admitted for permanent residence upon presentation of a third preference quota immigrant visa issued to her by the United States Consulate, Naples, Italy, as the unmarried minor child of a permanent resident alien. The special inquiry officer found respondent to be deportable on the charge stated in the order to show cause and granted her voluntary departure with an automatic order of deportation in the event she fails to depart. Respondent appeals to this Board.

The record shows that at the time respondent filed her application for an immigrant visa at the American Consulate, and at the time it was issued to her on February 5, 1959, she was the unmarried daughter of a legally resident alien. At that time she was entitled to a third preference visa under section 203(a)(3) of the Immigration and Nationality Act.[1] On April 9, 1959, a few days before her

---

[1] Section 203(a)(3), Immigration and Nationality Act: "The remaining 20 percentum of the quota for each quota are for such year, plus any portion of such quota not required for the issuance of immigrant visas to the classes specified in paragraphs (1) and (2), shall be made available for the issuance of immigrant visas to qualified quota immigrants who are the spouses or the *children* of aliens lawfully admitted for permanent residence." (On September 22, 1959, 73 Stat. 644, the word *children*, was changed to read "unmarried sons or daughters.")

562713—61——44

departure from Italy, respondent was married by civil and church ceremony. At the time she entered the United States she did not disclose the fact of her marriage to any immigrant inspector, and she entered under her maiden name. She is still married, and her husband, a native and citizen of Italy, still resides in that country.

There are two issues in this case: (1) Is respondent deportable on the charge stated? (2) Is respondent eligible for the discretionary relief provided in section 211(c) and (d) of the act? We find, first, that respondent is deportable on the charge stated in the order to show cause.

The definition section of the Immigration and Nationality Act of 1952, section 101(b)(1), provides, "The term 'child' means an *unmarried person* under 21 years of age who is—(A) a legitimate child * * *." Therefore, the change in the term, "children of aliens" in the quota section, 203(a)(3), on September 22, 1959 (see footnote one) constituted no change in the law. The amendment evidently was to make doubly clear the intention of Congress that only an unmarried child qualifies for a third preference visa under section 203(a)(3).

Counsel contends that there is no provision in section 241 for deporting an alien in respondent's position. Section 241(a)(1) declares, "Any alien in the United States * * * shall, upon order of the Attorney General, be deported who—(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry." Chapter 2, Documentary Requirements, section 211(a) states, "No immigrant shall be admitted into the United States unless at the time of application for admission he * * * (4) is *of the proper status under the quota specified in the immigrant visa.*" It is not sufficient that she be an unmarried minor child when the visa is issued to her. She must be of the proper status under the quota specified in her visa at the time she enters the United States. She was not of the specified status, and she is, therefore, deportable under section 241(a) as a person "excludable by the law existing at the time of such entry."

The briefs of counsel have gone extensively into the matter of respondent's good faith, whether or not the marriage was consummated, and whether or not the record establishes that respondent was on notice that marriage prior to entry would disqualify her from using her third preference visa. The Board has taken the view consistently in these cases that even if the holder of such a visa does not know that marriage invalidates his visa, and practices no fraud or concealment, he is deportable. He is not of the "proper status under the quota specified in the immigrant visa," as required by section 211(a).

The only *reported* decision of this Board concerning a marriage

following issuance of a third preference visa which invalidated the visa prior to entry into the United States is *Matter of T——*, 3 I. & N. Dec. 528 (B.I.A., April 6, 1949). There the alien, while still a minor, obtained an annulment of her marriage in Texas. The decree was declared by the court to be an annulment of the marriage contract *ab initio*. Therefore, we terminated proceedings because the alien, by the annulment, again became an unmarried minor child. There is no such issue in the instant case.

Counsel quotes from *United States ex rel. Leibowitz v. Schlotfeldt*, 94 F.2d 263 (C.A. 7, 1938), in support of his application. The court in that case repeatedly stated that the "appellee would have been entitled to a quota visa if his correct name and age had been stated," and he "was within the quota provisions and otherwise met the prescribed requirements to enable him to effect a legal entry." The case cited is not applicable to the instant proceeding. Respondent became ineligible for the status claimed in the visa issued to her.

The matter of good faith does go to the question of whether the Board will act favorably on respondent's petition for favorable exercise of the discretion under section 211(c) and (d).[2] The record contains a mimeographed, one-page document, entitled "Marital Declaration," signed by respondent and attached to her visa. This declaration, headed "American Consulate General, Naples, Italy," dated February 5, 1959, states, "I understand that this visa will become invalid should I marry prior to my admission to the United States Should I marry I understand if I make application at a U.S. port of entry I will be excluded or, if admitted, liable to deportation." The marital declaration appears both in English and in Italian, and is signed by respondent on the blank line for signature at the end of the paragraph in Italian. Respondent testified that she is able to read and write in the Italian language. There is no evidence concerning the length of time she attended school, but her testimony is precise and well phrased.

Counsel submits that the "Marriage Declaration" is not prescribed or authorized by the immigration act and is of no binding force. The device of the marriage declaration has no legal significance, of course, except that it is additional evidence that notice was given

---

[2] Section 211(c) provides: "The Attorney General may in his discretion, subject to subsection (d), admit to the United States any otherwise admissible immigrant not admissible under clause (2), (3), or (4) of subsection (a), *if satisfied that such inadmissibility was not known to and could not have been ascertained by the exercise of reasonable diligence* by, such immigrant prior to the departure of the vessel. * * *" (Emphasis supplied.)

Section 211(d) provides that the discretion under 211(c) shall not be exercised unless the immigrant can obtain a quota number under the proper quota during the present fiscal year or during the next fiscal year.

an unmarried minor child (of marriageable age) applying for a third preference quota visa. The fact is that since this marriage declaration has been in use by United States consulates appeals to the Board such as the instant case have greatly decreased.

The marriage declaration is intended to emphasize the statement set forth in the visa, paragraph 30, "I claim to be a third preference quota immigrant and my claim is based on the following facts: Minor unmarried daughter of an alien lawfully admitted to the United States for permanent residence." Paragraph 31 lists the documents required by the Immigration and Nationality Act, filed herewith and made a part hereof, as follows: "birth certif., *single status certif.*, family status certif., penal docs. (3), marital statement." Thus the immigration documents in the possession of this respondent from February 5, 1959 until the date she was admitted to the United States, April 20, 1959, declare in not less than four places that she is a minor unmarried daughter, as required by section 101(b)(1), the definition section, and section 203(a)(3), the quota section of the act.

Counsel ridicules the suggestion that the "immigrant examines, scrutinizes and remembers" the documents he is asked to sign, and states that the immigrant signs all papers requested and, evidently, never looks at them again. The travel documents were in the hands of respondent for more than 2 months prior to her marriage. Counsel criticizes the wording of the "Marital Declaration." Certainly it must be admitted that it is awkwardly phrased. The fact remains that it should be enough of a warning to have put a literate person on notice that marriage following the issuance of the visa, but prior to her entry into the United States, would in some way seriously affect her immigrant status, even if the other statements and declarations in her visa regarding her unmarried status had made no impression upon her.

The facts of the case are not as they would be if the documents had been signed by respondent and returned to a Government official, so that she did not see them from the time she signed them until the time she applied for admission into the United States. She stated at her hearing that she signed all the documents without stopping to read them. However, in her preliminary statement (Ex. 6, p. 3) she said that she thinks she read the document but cannot remember; she only remembers signing it.

We fail to see where counsel derives comfort from *Clarke* v. *Landon*, 139 F. Supp. 113 (D. Mass., 1956), or from *Landon* v. *Clarke*, 239 F.2d 631 (C.A. 1, 1956). The instant case falls under the rule that if the misrepresentation had been known at the time of respondent's entry into the United States, she would have been denied use of the visa in her possession.

Not only was respondent not eligible for the preference visa she obtained, but she now seeks a third preference quota visa for her husband as the spouse of an alien lawfully admitted for permanent residence. Thus, respondent and her husband would both enter the United States under the preferences, rather than having to wait out their turn on the lists for nonpreference visas.

We find that this is not an appropriate case for the favorable exercise of the discretion provided in section 211(c). Respondent has not established to our satisfaction, as required by the statute, that her inadmissibility under the preference visa issued to her "was not known to and could not have been ascertained by the exercise of reasonable diligence by" her, prior to the departure of her vessel from Italy for the United States. On the contrary, it is our opinion that she is a person who is able to comprehend the meaning and effect of the documents placed before her. The special inquiry officer has granted respondent voluntary departure, and that is the maximum relief available to her on this record.

**Order:** It is ordered that the appeal be and is hereby dismissed.