MATTER OF BOX

In DEPORTATION Proceedings

A-11068150

*Decided by Board September 5, 1962*

(1) Where respondent, a native and citizen of Haiti, who, after having been denied an immigrant visa, entered the United States in 1957 using an alias; and who, to escape physical persecution upon being returned to Haiti in 1958, assumed a fictitious identity in which he was married, in which he secured a delayed birth certificate with which he obtained a passport and visa for entry to Nassau where, in such assumed identity, he lived for 1½ years and made application in 1960 for a visa to come to the United States, his willful misrepresentations as to place and date of birth, parentage, marital status, prior residence, and use of an alias were not material under section 212(a)(19) of the Immigration and Nationality Act because on the true facts a ground of inadmissibility would not have been revealed nor would inquiry have resulted in a proper determination of excludability. cf. *Matter of Sarkissian*, Int. Dec. No. 1253.

(2) Where in a deportation proceeding a no passport charge under section 212(a)(20) of the Immigration and Nationality Act is linked to a visa charge under section 212(a)(19) of that Act by the common ground of misrepresentation as to identity and the visa is found to have been validly issued despite the existence of misrepresentations as to identity, the passport charge is merged with the visa charge and falls.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under section 212(a)(19) of the Act of 1952 as an alien who procured visa by fraud or willful misrepresentation of a material fact.

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under section 212(a)(20) as an alien immigrant not in possession of a valid unexpired passport.

The examining officer has filed this appeal from the order of the special inquiry officer terminating proceedings. The appeal will be dismissed.

The respondent a 33-year-old married male, a native and citizen of Haiti, was admitted to the United States for permanent residence on July 20, 1960, upon surrender of a nonquota immigrant visa issued to him on July 14, 1960, at Nassau, Bahamas. The Service alleges that

this visa was obtained by fraud because in obtaining it, respondent wilfully failed to furnish truthful information concerning material matters. The Service also contends that the respondent was not in possession of a valid passport when he applied for admission.

Respondent's testimony, which is uncontradicted, and which, as far as this record shows, was given after he had voluntarily come to the Service, reveals the following: The respondent joined the army in Haiti in 1949; he reached the rank of sergeant. In 1957, one Daniel Fignole came to power by revolutionary means; within a few months, he was arrested by the army and sent to exile. At the same time, respondent who was known to be a supporter of Fignole was arrested, jailed, and discharged from the military service with orders to leave the city. Respondent then attempted to obtain a visa to come to the United States for permanent residence but was refused because he did not have a sponsor. The period of a year and a half following the attempt, respondent first alleged, had been spent in Haiti hiding; however, he later voluntarily informed the Service that he had spent the time in the United States. He revealed that in September 1957, using the alias Albert Bethol, he had flown to the United States ostensibly in transit to Canada, but actually for the purpose of staying in the United States. Respondent did manage to stay in the United States until December 1958, when he was apprehended and placed in the custody of the transportation company for return to Haiti.[1]

After this return, respondent went into hiding; he decided he must escape because of the danger he was in. In February 1959, he secured a delayed certificate of birth showing the birth of one Claude Charles, a name he made up. Respondent used the birth certificate to secure a Haitian passport and obtained a visa for entry into Nassau, Bahamas. Before leaving, he married using the name of Charles, and then went to Nassau where, still using the name Charles, he obtained employment. His wife joined him in Nassau on a visit. Two children were born of the union. One child is two years old, the other a few months more than a year. The wife and children live in Haiti where the wife uses the name Charles.

After a year and a half in Nassau, Bahamas, respondent applied for a visa to come to the United States for permanent residence. Application was made in the name of Claud Charles, and information given about Charles to correspond with that given when respondent applied for the delayed certificate of birth. Thus, falsely shown were the city and date of respondent's birth, his parents' names, and the

---

[1] It is assumed that no visa was involved since respondent was turned over to the transportation company for return instead of being placed under deportation proceedings (22 F.R. 9783 (1957) (now found in 8 C.F.R. 212.1(e) and 214.2 (c)(1) (1962 Supp.)).

fact that his father was living. Furthermore the visa failed to show the existence of a wife and a child, residence in the United States, and the use of an alias. Respondent stated that he assumed the identity of Claud Charles only to escape from Haiti to Nassau, but that he used the same name when applying for a visa both because it had become the name by which he was known and because he felt that if he had told the truth he would have had trouble in getting a visa to come to the United States.

Using the standards as to materiality laid down by the Attorney General in *Matter of S— and B—C—*, Int. Dec. 1168 — standards which place upon the applicant for the visa the burden of establishing that he was not excludable and that inquiry would not have resulted in a proper determination that he was excludable — the special inquiry officer held that the respondent had established that there were no grounds upon which he was excludable and that had consul been in possession of the actual facts, it did not appear that a proper determination of excludability could have been made upon them or upon the results of any investigation which might have been completed.

The examining officer maintains that respondent obtained his visa by concealment of material facts concerning his true name, residence in the United States and other matters, and by concealment of the fact that he was excludable under section 212(a)(20) of the Immigration and Nationality Act as one who was without a valid passport.

At oral argument, counsel for respondent contended that had the true facts been known, inquiry would not have placed respondent in an excludable class. Counsel points out that despite the misrepresentation on the visa application, true nationality was revealed by respondent, and that the misrepresentations were made by respondent not to defraud the United States but to save his life which was threatened by political persecution. Counsel points out that the name in which the respondent received his visa had been one used for over a year. Counsel cites *Chaunt* v. *U.S.*, 364 U.S. 350, 355; *U.S. ex rel. Leibowitz* v. *Schlotfeldt*, 94 F. 2d 263 (7th Cir. 1938); and *Matter of M—R—*, Int. Dec. 1203.

We believe the special inquiry officer correctly disposed of this case. If both the visa and the passport had reflected the truth concerning respondent's place of birth, date of birth, parentage, prior residence, and uses of aliases, there would have been no ground of inadmissibility revealed nor would inquiry on the basis of the true facts have resulted in a proper determination of excludability.

The examining officer contends that had an investigation been conducted, information might have been forthcoming which would have raised a question as to respondent's admissibility. The Attorney Gen-

89

eral has carefully pointed out that the "theoretical possibilities" of what an investigation made at the time of the application might have uncovered are not sufficient to sustain a charge. The Attorney General stated that the "available facts" must "indicate the existence of a substantial question as to the alien's eligibility to enter the United States" before the impairment of investigative opportunity may operate to bar an alien's entry (*Matter of S— and B—C—, supra*, at p. 8). In the absence of available facts here indicating the existence of a substantial question as to respondent's eligibility to enter and in view of the failure of the Government to suggest the existence of a ground of exclusion although afforded a reasonable opportunity for adequate investigation, we do not believe it proper to hold that the impairment of investigation here resulted in the obtaining of the visa by fraud.

The examining officer is of the belief that the respondent obtained an advantage to which he would not have been entitled had the true facts been known. We are aware of no barrier to respondent's admission under the immigration laws which was concealed by his misrepresentations.

At oral argument, the Service Representative contended section 402(a) of the Immigration and Nationality Act which amends 18 U.S.C. 1546 should be used as a guide in evaluating the misrepresentation of identity here. Materiality as to the use of a false name must be judged by the standards carefully laid down by the Attorney General rather than by use of a comprehensive penal provision which concerns many unlawful acts and which has not as yet been applied in deportation proceedings to determine whether a misrepresentation is material.

The Service Representative relies upon comment in the footnote on page six of *Matter of S— and B—C—*, Int. Dec. 1168, which raises the question as to whether a visa issued in the name of another is a valid visa under section 212(a)(20) of the Act. Whatever may be the meaning of this footnote, we do not believe it is applicable to the situation in the instant case since the respondent received the visa in a name which had become his own by use over a substantial period of time. The Service Representative relies upon *Matter of S—*, Int. Dec. 1190. *Matter of S—*, did not concern a passport nor did the Attorney General express an opinion there on the issue before us.

The service contends that section 212(a)(19) of the Act must be considered as a separate and distinct count in no way dependent upon the concealment of a ground of deportation and that even if the visa had been valid, the passport charge could still be sustained because it had been issued to a nonexistent person. The Service Representative cities *U.S.* v. *Rodriguez*, 182 F. Supp. 479, 484 (S.D. Cal., 1960), aff'd *sub nom. Rocha* v. *U.S.*, 288 F. 2d 545 (9th Cir. 1961) *certiorari denied* 366 U.S. 948, and *De Lucia* v. *Flagg*, 297 F. 2d 58 (7th Cir. 1961)

*certiorari denied* 369 U.S. 837, in support of his contention that the passport is invalid.

On this issue, counsel for respondent points out that respondent used his own photograph on the passport and revealed his true identity in that sense, that the passport did show the country of birth and origin, that it is not shown that the passport is invalid for return to Haiti and that presumptive credit should be given to the passport.

As to the passport charge, the special inquiry officer held that the Attorney General had ruled that a misrepresentation as to identity was not necessarily material and since in the instant case the misrepresentation as to identity was not in fact material, it should not make respondent deportable. Otherwise, the special inquiry officer held, identity would always become material although the Attorney General had ruled to the contrary. We agree with the special inquiry officer. A charge based upon possession of a passport in an assumed name may or may not be material. If it is linked to a visa charge and the visa is found to have been validly issued despite the existence of misrepresentations as to identity, then the passport charge should be merged with it and should fall. The essential purpose of the passport is to insure the return of an alien to a foreign country if for some reason he is not admitted on his visa. Since the visa is valid and admission will not be challenged, the existence of a valid passport becomes a matter of lesser importance. (See *U.S. ex rel. Leibowitz v. Schlofeldt,* 94 F. 2d 263 (7th Cir. 1936), *Matter of M—R—,* Int. Dec. 1203.) In fact, there is nothing in this record to show that the Government of Haiti would not have honored the passport.

The Service Representative contended that *Leibowitz* no longer applies because of the present existence of specific laws making the procurement of a visa by misrepresentation a matter of fraud (sections 212(a)(19) of the Act and 402(a) of the Act). The existence of section 212(a)(19) of the Act was considered by the Attorney General, in establishing the standards in misrepresentation cases; criminal provisions similar to those found in section 402(a) of the Act have been in existence since 1924 (see Act of May 26, 1924, c. 190, sec. 22, 43 Stat. 165).

*Rodriguez,* cited by the service, is not apposite. It concerned a matter of jurisdiction in a criminal case. *De Lucia* concerned a person who was inadmissible to the United States under his true identity and who, moreover, had not lived under the name in which the passport was issued. Furthermore, De Lucia made use of the false name to avoid the immigration laws, while respondent adopted false name to escape from physical persecution.

ORDER: It is ordered that the appeal of the examining officer be and the same is hereby dismissed.