**UNITED STATES of America**
v.
**Carmelo MONTALBANO, Appellant.**

**UNITED STATES of America**
v.
**Vito GENOVESE, Appellant.**
**Nos. 11785, 11790.**

United States Court of Appeals
Third Circuit.

Argued April 12, 1956.

Decided Aug. 21, 1956.

Rehearing Denied in No. 11790
Sept. 18, 1956.

No. 11785:

Filindo B. Masino, Philadelphia, Pa., for appellant.

Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa. (W. Wilson White, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

No. 11790:

Joseph H. Freehill, Washington, D. C. (Fanelli & Freehill, Washington, D. C., Ascenzio R. Albarelli, Asbury Park, N. J., on the brief), for appellant.

Albert G. Besser, Asst. U. S. Atty., Newark, N. J. (Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This opinion covers two separate appeals which arose from denaturalization

proceedings. In No. 11,785, appellant Carmelo Montalbano challenges the order of the District Court for the Eastern District of Pennsylvania revoking his citizenship and cancelling his certificate of naturalization. In No. 11,790, Vito Genovese appeals from a similar order entered as to him by the District Court of New Jersey.

■ The sole question raised by Montalbano, and one of the questions raised by Genovese, is whether plaintiff, United States of America, sustained its burden of establishing that the respective defendants procured United States citizenship fraudulently and illegally.[1] All parties agree that the government's burden is a heavy one and this court should affirm only if the records contain clear, unequivocal, and convincing evidence which does not leave the issues of fraud or illegality in doubt. Schneiderman v. United States, 1943, 320 U.S. 118, 158, 63 S.Ct. 1333, 87 L.Ed. 1796; Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; United States v. Anastasio, 3 Cir., 1955, 226 F.2d 912, certiorari denied, 1956, 351 U.S. 931, 76 S.Ct. 787.

In both cases, the government's charges rested on the alleged fact that in applying for citizenship each defendant had lied when asked whether he had ever been arrested or charged with violation of any law of the United States or State or any city ordinance or traffic regulation. There is no dispute that both Montalbano and Genovese had criminal records.[2]

The record in the Montalbano case shows that on February 15, 1933, Montalbano filed with the Immigration and Naturalization Service his "Application for Certificate of Arrival and Preliminary Form for Petition for Citizenship" which admittedly was not prepared by anyone in the Immigration Service, but was sent in by Montalbano or by someone on his behalf and was signed by Montalbano. Question 29 on that form, which read "Have you ever been arrest-

1. Section 338(a) of the Nationality Act of 1940, 54 Stat. 1158 [Immigration and Nationality Act 1952, 8 U.S.C.A. § 1451 (a)], provided as follows:

"It shall be the duty of the United States district attorneys for the respective districts, upon affidavits showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 301 in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured."

2. Montalbano's criminal record is: On December 28, 1922, he was convicted at Wilmington, Delaware, of carrying concealed deadly weapons and was sentenced to pay a fine of $400; on December 17, 1928, he was convicted at Philadelphia on eleven bills of indictment charging conspiracy to extort and sentence was suspended; on February 21, 1931, he was indicted in the United States District Court of New Jersey on sixteen counts of transporting stolen motor vehicles in interstate commerce to which he pleaded guilty and was sentenced to five years' imprisonment (suspended) and five years' probation; on December 15, 1932, he was arrested at Newark, New Jersey, and charged with illegal possession of lottery tickets; on May 2, 1933, he was convicted in the First Criminal Court of the State of New Jersey as a disorderly person and on the charge of "no owner's license in possession" and sentenced to serve ninety days in the Hudson County Penitentiary. He is presently incarcerated in the New Jersey State Prison where he was sentenced to life imprisonment on a conviction of murder on January 7, 1943.

Genovese's criminal record shows the following arrests: April 22, 1918, felonious assault; April 25, 1924, illegal possession of weapon; May 13, 1924, homicide by auto; July 25, 1925, burglary; October 10, 1925, homicide; December 4, 1934, homicide; January 17, 1925, disorderly person; January 13, 1931, possession of concealed weapons. On all of these arrests, he was discharged. In addition, he was arrested and convicted April 15, 1917, for illegal possession of a revolver and sentenced to sixty days in the workhouse, and on January 29, 1927, he was arrested and convicted of carrying a dangerous weapon and sentenced to pay $250 fine and to serve thirty days.

ed or charged with violation of any law of the United States or State or any city ordinance or traffic regulation?" was answered in the negative. On March 15, 1933, Montalbano was interviewed twice under oath by Naturalization Examiners Halstead and Braden, who were called as witnesses in the district court and testified that, although they had no independent recollection of their respective interviews, the notes which they made on defendant's preliminary application and his petition for naturalization positively indicated that the defendant had told each of them that he had never been arrested.

The government's case against Genovese rested on similar facts. Though it is not clear who filled out his form, the same question about arrests was answered in the negative and the form was signed by him. He too was interviewed by Naturalization Examiners who made certain notations and marks on the relevant forms. These examiners were dead at the time of trial, but evidence as to the customary procedures during such interviews and the meaning of the markings and notes on the forms clearly indicated that Genovese had been explicitly asked about arrests and charges of crime and gave untruthful answers.

Both Montalbano and Genovese denied concealing past arrests or convictions. Montalbano contended that he disclosed his record but was told it did not matter unless he had "served time," while Genovese said that he had not read nor had he had read to him the question on the form about arrests and was told during oral interview that his record was of no interest since he had never been convicted of a felony. The testimony of each was rejected by the respective district courts.

█ We have analyzed the records closely and see no necessity for detailed outline of the logically persuasive features of the government's evidence in these cases. In both, the government adequately met the heavy burden which it faced. The records clearly justify the conclusion that each defendant deliber-

ately concealed his criminal record and in so doing committed a fraud upon the government which supports the revocation of citizenship. United States v. Accardo, D.C., 113 F.Supp. 783, affirmed per curiam, 3 Cir., 208 F.2d 632, certiorari denied, 1954, 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098; Corrado v. United States, 6 Cir., 1955, 227 F.2d 780.

█ The other basis for the revocation—that citizenship was illegally procured—needs little discussion. The law required that each defendant be a man "of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same" for a period of five years immediately preceding his application for citizenship. Act of June 29, 1906, § 4, Fourth, 34 Stat. 598. The deliberate failure of each defendant to disclose his criminal record shows that he was not of good moral character and therefore did not meet the statutory prerequisite to citizenship. United States v. Accardo, supra; Corrado v. United States, supra.

█ In the Genovese case, another point raised is that Genovese's citizenship cannot be revoked on account of fraud because, even had he revealed his criminal record during naturalization proceedings, that record was such that it would not have justified a refusal of citizenship. The theory seems to be that one may deliberately engage in a falsehood concerning required facts during naturalization proceedings without fear of consequences so long as the truth, had it been revealed, would not have resulted in refusal of citizenship. The proposition has a built-in rebuttal. Mere recital of it bares its absurdity. If the government thinks it important enough to ask a question which it has authority to ask, the answer cannot be considered immaterial and meaningless. That the answer may not lead to a refusal of citizenship is not the only consideration. The government is entitled to know all the facts which it requires. We agree with what was said in Corrado v. United States, supra, 227 F.2d at page 784:

"Upon analysis, the issue is not whether naturalization would have been denied appellant had he revealed his numerous arrests, but whether, by his false answers, the Government was denied the opportunity of investigating the moral character of appellant and the facts relating to his eligibility for citizenship. How could any Government official or witness say whether or not citizenship would have been denied appellant from an investigation of the various causes of his arrest, when no opportunity for investigation was afforded? His false statement upon the material matter in actuality caused no investigation to be made. To be awarded citizenship in the United States exacts the highest standard of rectitude. Our Government should be afforded full opportunity for investigation of the moral character and fitness of an alien who seeks to be vested with all the rights, privileges and immunities of a natural born citizen of the United States. Where fraud has been practiced by the alien in procuring citizenship, it is not required that the Government in a denaturalization proceeding should meet the standard necessary for conviction in a criminal case. It will suffice to show that the applicant lied concerning a material fact which, if revealed, might have prevented his acquisition of citizenship."

United States v. Kessler, 3 Cir., 1954, 213 F.2d 53, cited as support for Geno-

vese's argument, does not help him because, in the Kessler case, this court concluded that there had not been an untruthful answer given to the question concerning arrests, and so no fraud had been committed.[3]

We have examined other questions raised. None of them are meritorious and therefore require no discussion.

For the foregoing reasons, the orders of the district courts will be affirmed.

3. Much has been made of Note 9 in the Kessler case. The first part of that note said, "We have found no decision and none has been cited to us where citizenship has been revoked for failure to disclose facts the revelation of which would not have justified refusal of citizenship in the first place." That portion of Note 9 is read by Genovese to mean that one may deliberately conceal a required fact. Note 9, however, was referring to concealment of a fact which one has no duty to volunteer, i. e., in Kessler, the illegal arrests. That such was the meaning of the first part of Note 9 seems clear in the context of the Kessler facts. This becomes apparent when one reads Note 9 in its entirety. That note, after the above quoted portion, refers to Note 3 in United States v. Doshen, 3 Cir., 1943, 133 F.2d 757, 760, which opinion was written by the writer of the Kessler opinion, and in the Doshen case, Note 3 and cases cited therein make it clear that concealment of any fact properly requested by the government in naturalization proceedings constitutes a fraud.