**Herman R. LANDON, District Director of Immigration and Naturalization, Respondent, Appellant,**

v.

**Elsa CLARKE, Petitioner, Appellee.**

**No. 5113.**

United States Court of Appeals
First Circuit.

Dec. 17, 1956.

Rehearing Denied Jan. 9, 1957.

Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., with whom Anthony Julian, U. S. Atty., Boston, Mass., was on brief, for appellant.

Edward O. Gourdin, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from an order entered February 17, 1956 in the United States District Court for the District of Massachusetts granting appellee's petition for a writ of habeas corpus and discharging appellee from the custody of the appellant.

The appellee Elsa Clarke, was born at Port Lima, Costa Rica, on November 5, 1918. She lived in Costa Rica with her parents for her first eight years and thereafter went with them to Panama. In 1934 she left Panama and went to Jamaica, British West Indies, where in 1943 she married Webster George Clarke, a British subject. Four children were born of this union, the first in 1944, the last in 1950.

In August 1952 the appellee obtained a Costa Rican passport from the Costa Rican Consul in Kingston, British West Indies. Shortly thereafter she left her husband and children, the circumstances surrounding the departure not being too clear from the record, and went to Costa Rica. According to her own admissions, the appellee falsely represented herself as single and gave her maiden name, Elsa Smith Walcott, so that the Costa Rican Consul in Jamaica would issue her a Costa Rican passport, which he would not have issued had he known of her marriage to a British subject, since by such marriage she also became a British subject.

On December 1, 1953 the appellee applied for an American Immigrant Visa at the United States Consulate at San Jose, Costa Rica. There she executed under oath an Application for Immigrant Visa and Alien Registration in which she falsely gave her name as Elsa Walcott Smith; falsely gave her last permanent residence as Costa Rica; falsely gave her marital status as single; and falsely failed to disclose the existence of her spouse and four minor children.

In support of her application for a visa, appellee submitted to the United States Consul criminal investigation reports from the authorities at Kingston, Jamaica and Limon, Costa Rica, certifying that there was no criminal record against Elsa Walcott Smith and Eliza Walcott Walcott, also known as Elsa Smith, these being variations of her maiden name. No police clearances were submitted by appellee showing her true married name, Elsa Clarke.

On December 6, 1953 appellee entered the United States at Miami, Florida and proceeded to Boston. She was interviewed by an Immigration and Naturalization Service Investigator on June 3, 1954. At this interview, appellee, without the benefit of counsel, admitted that she had knowingly misrepresented her identity, marital status and last residence in her application for a visa to the United States, and she, further, admitted that she had committed adultery in Costa Rica. On the basis of information obtained in that interview a warrant of arrest was issued June 3, 1954, under 8 U.S.C.A. § 1251(a) (1) charging that at time of entry appellee was within one or more of the classes of aliens excludable by the law existing at the time of such entry, specifically, aliens who admit committing acts which constitute the elements of a crime involving moral turpitude, under 8 U.S.C.A. § 1182(a) (9).

On June 22, 1954 and April 20, 1955 further hearings were held by a Special Inquiry Officer. With the benefit of counsel appellee in these interviews re-

peated the admissions of June 3, 1954. The sworn statement of the latter date was received in evidence and made part of the record without objection.

At the June 22, 1954 hearing there was lodged against the appellee an additional charge under 8 U.S.C.A. § 1251(a) (1), specifically, that at the time of entry she was within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit, aliens who have procured a visa or other documentation by fraud or by willfully misrepresenting a material fact under 8 U.S.C.A. § 1182(a) (19).

The Special Inquiry Officer found appellee deportable under the second charge, 8 U.S.C.A. § 1251(a) (1) and 8 U.S.C.A. § 1182(a) (19),[1] while dismissing the first charge.

The Board of Immigration Appeals dismissed an appeal to it, brought by the present appellee, and denied a petition for reconsideration of its finding. A petition for a writ of habeas corpus was filed February 8, 1956, and a hearing was held on February 15, 1956. This appeal results from the granting of the writ and the discharging of the appellee from appellant's custody by the order of the district court entered on February 17, 1956.

Since applicable sections of the Immigration and Nationality Act of 1952, 8 U.S.C.A. §§ 1251(a) (1), 1182(a) (19), conjunctly provide that aliens procuring visas or other documentation by fraud or by willfully misrepresenting a material fact are excludable from entry and deportable even after entry, the main issue in this case is the materiality of

false representations made by appellee concerning marital status and identity in her Application for Immigrant Visa and Alien Registration.

The appellee's contention, adopted by the district court, is that a misrepresentation made in procuring immigration papers becomes material only when inquiry resulting from the true facts would have been enough to justify the refusal of a visa or exclusion upon entry. Accordingly, appellee argues that since she would have been entitled to a visa under the true facts, that is, as a married woman, her misrepresentations were not material so as to justify deportation.

To sustain this principle the appellee relies heavily on United States ex rel. Leibowitz v. Schlotfeldt, 7 Cir., 1938, 94 F.2d 263. We believe that a close scrutiny of the facts of that case reveals such reliance is unwarranted.

In the Schlotfeldt case, "Leo" Leibowitz, while in Latvia and for the purpose of evading the Latvian draft, adopted the name of his older brother "Feive" Leibowitz some four years before applying for an American immigration visa and some seven years before the visa was granted. Moreover, he used the assumed name so widely in those years that he had in practical effect adopted "Feive" as a trade or business name.

That the Seventh Circuit, in holding that the misrepresentations complained of were irrelevant and did not constitute grounds for deportation, placed great significance on the fact that the original misrepresentation had not been made with the intent to perpetrate a fraud on this Government, is

1. "§ 1251. *Deportable aliens—General classes*

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

"(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry; * * *"

"§ 1182. *Excludable classes of aliens; non-applicability to certain aliens; waiver of requirements; pa-*

*role of aliens; report to Congress; suspension of entry by President*

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

＊   ＊   ＊   ＊   ＊

"(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact; * * *"

clear from the statement of the court at pages 265, 266 where it said:

"* * * under the circumstances presented, * * * no fraud was intended, and, as a matter of fact, none was perpetrated on this government by appellee in obtaining his immigration visa. Whether the use of such name and age enabled him to escape military service in some other country, we are not directly concerned. * * * Therefore, the misrepresentations complained of were irrelevant and do not constitute grounds for deportation."

The appellee in the instant case misrepresented herself for the first time for the purpose of obtaining a Costa Rican passport which was an essential first step toward the acquisition of an American visa some fifteen months later. Indeed the appellee admitted that her misrepresentations were made for the express purpose of entering this country.[2] Where misrepresentations concerning identity were made solely for the purpose of entering the United States they have been held material so as to warrant deportation. McCandless, Commissioner of Immigration v. United States ex rel. Murphy, 3 Cir., 1931, 47 F.2d 1072. Cf. United States ex rel. Fink v. Reimer, 2 Cir., 1938, 96 F.2d 217, certiorari denied 1938, 305 U.S. 618, 59 S.Ct. 78, 83 L.Ed. 395.

■ Although the Reimer case reasserts the rule of the Schlotfeldt opinion in stating that a misrepresentation is not material to the alien's entry, unless it is one which, if known, would have justified a refusal to issue a visa, realistic appraisal of the facts reveals immigrant Fink did have an unexpired visa of his own and therefore might have acquired the necessary papers in his own right. The misrepresentations were made to gain the advantage of a preference quota visa. Likewise, in the case at bar the appellee's misrepresentations were made to gain the advantage of acquiring a visa without an appropriate police investigation of most of her adult life as provided by 8 U.S.C.A. § 1202(b). That she might have obtained a visa on the true facts does not vitiate the fraud. United States ex rel. Jankowski v. Shaughnessy, 2 Cir., 1951, 186 F.2d 580; United States ex rel. Volpe v. Smith, 7 Cir., 1933, 62 F.2d 808, 1933, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298 (affirmed without mention of this point.)

But, notwithstanding the difficulty we have in applying the announced principle of the court to the facts of the Reimer case, it can be reasonably concluded from that opinion that the court considered a misstatement concerning identity a material misrepresentation, and, further, that the court considered the Government's right to investigate an incoming alien upon entry as vital to the immigration process. The court in the Reimer case, in this connection, stated in 96 F.2d at page 218:

"* * * They [the immigration papers] are the means of identifying the bearer by name and otherwise, so that the propriety of his admission may be scrutinized, and he can be followed if admitted; if they describe him as someone else, he makes that scrutiny impossible. So it has always been held when the question has arisen. * * *"

■ We believe that a misrepresentation concerning identity by an incoming alien which results in entry into this country without the proper statutory investigation by immigration authorities is material, justifying deportation, no matter what the outcome of the investigation would have been if it had been made. The importance of such an investigation has been recognized by other courts in dealing with deportation cases.

In United States ex rel. Jankowski v. Shaughnessy, supra, the alien, when ap-

2. Appellee's vague assertions that she misrepresented herself due to fear that her husband would not "sign off" do not merit further consideration since they are not factually established in the record.

plying for an American visa, concealed a prior criminal conviction. The Second Circuit, in holding him deportable, stated in 186 F.2d at page 582:

"The misrepresentation and concealment were material. Had he disclosed those facts, they would have been enough to justify the refusal of a visa. For surely they would have led to a temporary refusal, pending a further inquiry, the results of which might well have prompted a final refusal."

Where an alien misrepresented himself as a citizen in entering the United States, the Seventh Circuit said in United States ex rel. Volpe v. Smith, supra 62 F.2d at page 811:

"The character of the deception which is here under consideration is significant. It was not one that went to a matter of detail—an incident in the officer's examination of the applicant. It was not merely a case of the applicant's falsifying. The falsification went to the vitals of any inspection. If appellant were a citizen of the United States, there was no inspection required. * * * Appellant's deception, therefore, was of a nature which resulted in the avoidance of an inspection."

It is significant that both the Reimer and Shaughnessy cases are more recent statements of the views of the Second Circuit than the opinion in United States ex rel. Iorio v. Day, 2 Cir., 1929, 34 F.2d 920, upon which the district court heavily relies. Moreover, the sections of the Immigration and Nationality Act of 1924, old Title 8 U.S.C. §§ 134, 155, applied by the court in the Day opinion, differed from the present legislation which expressly provides that those obtaining immigration papers by fraud or misrepresentation of a material fact are excludable. 8 U.S.C.A. § 1182(a) (19). Although we do not rely on this for our decision, such clear legislative intent cannot be dismissed lightly.

Admittedly the case at bar is unique in that appellee falsely gave her once true name and not that of another or a totally false fact. But the misrepresentation was not any less deceptive to the authorities entrusted with the execution of our immigration laws. This employment of fraud precluded ten years of appellee's life, 1943 to 1953, from investigation as required by 8 U.S.C.A. § 1202(b), thus, thwarting any inspection as to her possible inadmissibility to the United States as a member of the excludable classes of aliens under the provisions of 8 U.S.C.A. § 1182.

That opportunity for such investigation is of vital importance has been plainly stated by the courts in the closely related field of naturalization. Corrado v. United States, 6 Cir., 1955, 227 F.2d 780, certiorari denied 1956, 351 U.S. 925, 76 S.Ct. 781; Brenci v. United States, 1 Cir., 1949, 175 F.2d 90; In re Zychol c, D.C.E.D.Mich.1930, 43 F.2d 438.

In the Corrado case, the question being the cancellation of citizenship of one who had become naturalized by concealing arrests and convictions for misdemeanors, the court stated in 227 F.2d at page 784:

"Upon analysis, the issue is not whether naturalization would have been denied appellant had he revealed his numerous arrests, but whether, by his false answers, the Government was denied the opportunity of investigating the moral character of appellant and the facts relating to his eligibility for citizenship. * * * It will suffice to show that the applicant lied concerning a material fact which, if revealed, might have prevented his acquisition of citizenship."

This reasoning which is equally persuasive in the case before us, was adopted by a recent Third Circuit case, United States v. Montalbano, 1956, 236 F.2d 757, certiorari denied sub. nom. Genovese v. United States, 77 S.Ct. 327.

The district court's view, necessitating, as it does, proof of whether an alien would have been excludable if he had told the truth, or if the proper investigation had been held, in order to decide the materiality of a misrepresenta-

**636**

tion, would force the courts into the realm of conjecture and speculation, in trying to make a decision only the proper authorities could have capably made.

 The last contention presented by appellee that she was denied a fair hearing, presented for the first time on appeal, is without merit. That appellee was not represented by counsel at the preliminary hearing was immaterial, since she was so represented at subsequent hearings. Plane v. Carr, 9 Cir., 1927, 19 F.2d 470, certiorari denied 1927, 275 U.S. 545, 48 S.Ct. 84, 72 L.Ed. 417; Ex parte Vilarino, 9 Cir., 1931, 50 F.2d 582. Throughout the two subsequent hearings in this case no objection was made to any part of the investigation by the appellee or her legal representative. The record on appeal does not substantiate the charges of unfairness made by the appellee.

A judgment will be entered vacating the order of the district court and remanding the case to that court for the entry of an order consistent with this opinion.