R. Tieken, U. S. Atty., Chicago, Ill., for the United States.

William Scott Stewart, Chicago, Ill., for defendant.

**UNITED STATES of America**

v.

**Paul DE LUCIA, also known as Felice De Lucia.**

No. 56 C 1676.

United States District Court
N. D. Illinois, E. D.

June 7, 1957.

LA BUY, District Judge.

The complaint in the above cause filed October 10, 1956, prays for the cancellation of a certificate of naturalization granted September 27, 1928, to Paul De Lucia for the reason that it was procured by concealment of material facts and by wilful misrepresentation.

During the course of the trial the court reserved its ruling on defendant's objections to the admissibility of several exhibits. The court overrules these objections and these exhibits are received in evidence.

The only evidence in the case is that presented by the plaintiff. The government introduced twenty-two witnesses and approximately seventy documents

and charts. The defendant, although present in the courtroom throughout the trial, offered no evidence on his own behalf. He previously invoked the protection of the Fifth Amendment and has refused to obey the court's order requiring him to respond to questions asked at his deposition. The sole information which this defendant has given is that he is Paul De Lucia and resides at 1515 Bonnie Brae, River Forest, Illinois.

Two deputy minute clerks identified this defendant as having appeared before them and saw him sign the name Paul De Lucia on appearance bonds involving other matters. (Exs. 25, 26.) A United States deputy marshal also identified the defendant as having been fingerprinted in the marshal's office in this city and that the defendant affixed his signature as Paul De Lucia. (Exs. 24A, 24B, 24C.)

The first basic issue which the government must prove is that this defendant, Paul De Lucia, is the same Paul De Lucia who was granted a Certificate of Naturalization in September 1928.

To this end the government's evidence consists of the testimony of Michael J. Fish, who identified this defendant as the same person for whom he appeared and signed as a witness during the naturalization hearings preceding the granting of the certificate. Mr. Fish testified that at that time he was employed as a staff photographer for the Chicago Tribune; that at that time Paul De Lucia was a restaurant manager; and that he did not know the defendant used the name Paul Maglio. He further testified that the other witness to the proceedings was Frank Meo, whom he believed to be now deceased.

Supplementing this testimony, the government presented documents relating to the naturalization proceedings. They consist of a Petition for Naturalization dated April 10, 1928 (Ex. 1); Preliminary Form for Petition for Naturalization, dated February 21, 1928 (Ex. 2); Declaration of Intention, dated January 9, 1925 (Ex. 4); Certificate of Naturalization dated September 27, 1928 (Ex. 5); and ship's manifest for the vessel S.S. Ryndam (Ex. 7). A perusal of these documents gives the following information: Paul Maglio arrived at the Port of New York from Boulogne, France, on August 10, 1920, on the vessel Ryndam and was coming to a person named Gennaro Calabrese; that his occupation was restaurant manager; that he was born in Apricena, Italy, on July 10, 1898 and his mother's maiden name was Nunzia Maria Torelli; that he used another name which was "Paul De Lucia" because he "got married on that name" and desired that his name be changed to Paul De Lucia; that he was married January 3, 1927 and his wife's name was Nancy, born October 2, 1905, in Naples, Italy and that he had a daughter, Mariana, born in Chicago; that he resided at 905 South Halsted Street, Chicago; that he had never been arrested and that he expected to use as witnesses Frank Meo, proprietor of a cigar store at 905 South Halsted Street, and Michael J. Fish, staff photographer for the Chicago Tribune residing at 4920 Monroe Street. The certificate of naturalization was granted to Paul De Lucia whose name was changed from Paul Maglio. Said certificate is signed "Paul De Lucia"; all the other documents being signed "Paul Maglio".

A handwriting expert testified and made a comparison of the signature of Paul De Lucia appearing on the Certificate of Naturalization with the known signatures of this defendant affixed before the two deputy minute clerks and the United States deputy marshal. (Ex. 51.) It was his conclusion that the signature was made by the same person. It was further his conclusion that the signatures of Paul Maglio appearing on the Petition for Naturalization, Declaration of Intention, Preliminary Form for Petition for Naturalization, and Naturalization Form No. 2328 (Ex. 3) and the signature of Paul De Lucia appearing on the certificate were made by the same person.

In addition, the government has submitted documentary evidence to show that this defendant has a wife named

Nancy Emily Gigante, born October 2, 1906 or 1905 in Naples, Italy, who resides at the same address as this defendant, 1515 Bonnie Brae, River Forest, Illinois, and whose old addresses were the same as this defendant's. (Exs. 17A, 17C, 17D, 17E, 19A, 19C, 19G, and 19I through L, 20B through D, 21A and 21B.) Nancy Emily De Lucia had three children named Mary, Anthony, and Paul, Jr., and this defendant had three children name Mary Anna, Anthony Paul, and Paul Richard. (Exs. 17E, 21F.)

It is the court's conclusion that this evidence clearly established that this defendant is the Paul De Lucia to whom a Certificate of Naturalization was granted September 27, 1928; and that this defendant, Paul De Lucia, used the name Paul Maglio when he entered this country and when he applied for a certificate of naturalization.

The next basic issue which the government must prove is that this defendant falsely assumed the name of Paul Maglio when he applied for his naturalization.

In this connection, a witness, Paul Maglio, not the defendant in this case, testified that his mother's maiden name was Nunzia Maria Torelli and his father's name was Enrico; that he was born in Apricena, Italy, on July 10, 1898; that he had five sisters all born in Apricena, four of whom were living named Adele, born 1890, Rosa, born 1893, Angiola, born 1895, and Elvira, born 1900; that his father died in 1924 at the age of 70 and his mother in 1940 at the age of 75. This witness stated he left Italy on July 23, 1920 and arrived in the United States on August 3, 1920. He stated that the population of Apricena at that time was approximately 6,000; that he had always lived in this town except for a short period of military service and until he left for the United States; that his occupation while in Apricena was a Clerk and Registrar in the City Hall and that his duties were to keep a record of all births and deaths; that there was no other "Maglio" family residing in Apricena, Italy, than his own when he lived there; that there was no other Enrico

Maglio in Apricena other than his father, nor was there any other Nunzia Maria Torelli other than his mother. He identified the records pertaining to his family which the government presented, as well as his own passport and citizenship papers. Government's Exhibit 14P is an attestation that no record of the birth of Paolo Maglio exists in Apricena other than that of Paolo Maglio born July 10, 1898, son of Enrico and Nunzia Maria Torelli. This witness, Paul Maglio, was requested to view the defendant, Paul De Lucia, and testified that this defendant was not his uncle, father, cousin or related to him in any way and that he had never seen him before in his life.

Alfonso Torelli, a cousin of the witness, Paul Maglio and a nephew of the witness' mother, corroborated the testimony of Paul Maglio and upon viewing the defendant stated he had never seen this man before in his life.

The court is of the opinion that the government has conclusively shown that the defendant, Paul De Lucia, was not Paul Maglio, born July 10, 1898, in Apricena, Italy; that he falsely assumed the name of Paul Maglio to enter this country; that he committed perjury when he stated his name was Paul Maglio in the preliminary papers for citizenship and thereby committed a fraud on the court.

The next issue which presents itself is whether Paul De Lucia is in truth and fact Felice De Lucia.

The government's evidence on this phase of the case consists of the testimony of Special Agent Philip Dunne and a number of documents, which may be grouped into two divisions: (1) information which had been voluntarily supplied by this defendant which is inconsistent with his identity as Paul Maglio and consistent with an identity as Felice De Lucia; and (2) the family history of Felice De Lucia.

In the first division of exhibits, a marriage register dated January 30, 1927, kept in the Holy Guardian Angel Church in Chicago, shows that Paolo di Lucia, age 29 years from Naples, son of An-

thony and Mary Annunziata was married to Annunziata Gigante, 21 years old, daughter of Ciro and Anna Porzio. (Exs. 18, 18A.) Nancy Emily De Lucia, wife of Paul De Lucia, had parents whose names were Anna and Ciro Gigante; her maiden name was Annunziata Gigante, and she was born October 2, 1905 in Naples, Italy. (Exs. 17E, 17G, 20D.)

On September 8, 1927, Paul De Lucia executed a signature card for the First National Bank of Chicago indicating his address was 917 Blue Island Avenue, that he was born in Naples, Italy, on November 14, 1897 and that his mother's maiden name was Maria Annunziata. (Ex. 20A.) Exhibits 20B and 20C show that in 1931 Nancy De Lucia resided at 917 Blue Island Avenue. The signature of Paul De Lucia was examined by the handwriting expert against the known signatures of this defendant made on the United States marshal's fingerprint cards. It was his conclusion that these signatures were made by the same person.

Two applications for beneficial membership in the Italo-American Union dated November 25, 1932 (Ex. 22A) and January 15, 1934 (Ex. 22B) were introduced. The applicant signed his name as Paul De Lucia, indicated he was born in Naples, Italy, on the "?" day of July, 1898; that he was married and his beneficiary was to be his wife Nancy E. De Lucia; that his father and mother were deceased at the ages of 65 and 40 respectively; that he had no brothers and had four sisters, ages 26 to 32 (Ex. 22A) and 27 to 33 (Ex. 22B). On November 22, 1935, Paul De Lucia, age 37, 5300 West Jackson Boulevard, owner of the Playhouse Theatre applied for insurance in the Northwestern National Life Insurance Company (Ex. 21C). On that application he stated he was born in Naples, Italy, on November 14, 1898, which was later corrected to November 14, 1897. It shows he had a daughter named Mary Anna and a son, Anthony P. De Lucia. In connection with that application Paul De Lucia gave certain answers to the medical examiner on the same day indicating date of birth to be November 14,

1898, that his father died in 1924 and his mother in 1918. (Ex. 22E.) On December 17, 1938, Paul De Lucia applied to the Equitable Life Assurance Society for a retirement annuity wherein he stated he was born in Italy on November 14, 1897, was married, lived at 5300 West Jackson Boulevard, and his occupation was World Playhouse. (Ex. 23A.) In a letter to the Equitable on January 20, 1939, he advised that he was born in Italy on November 14, 1897. (Ex. 23D.) On November 25, 1941, Paul De Lucia made certain answers to the medical examiner in connection with application for insurance in Northwestern Mutual Life Insurance Company indicating his date of birth to be November 14, 1897, that his father and mother were deceased at the ages of 53 and 39 respectively, that he had no brothers, and had four sisters, ages 36 to 42. (Ex. 21D.)

The handwriting expert made comparisons of these signatures with the known signatures of Paul De Lucia, and, with one exception, testified that the signatures had been written by the same person.

Special Agent Philip Dunne testified to a conversation had with this defendant on October 1, 1947, in the office of the Federal Bureau of Investigation. He testified that the defendant stated his name to be Paul Maglio, born in Apricena, Italy, on July 10, 1898; that his parents were deceased, but he had four sisters residing in Italy whose names were Emily, Anna, Clementina, and Louisa ages 41 to 47; that he married Nancy Annunziata Gigante on January 30, 1927, and had three children Marianna, Anthony Paul and Paul Richard; that in the early thirties he lived at or about 5300 West Jackson Boulevard, and in the early forties bought a farm near Joliet, Illinois.

From this evidence it appears that the defendant voluntarily has given the following information which is inconsistent with his identity as Paul Maglio; that he was born in Naples, Italy, on November 14, 1897, that his parents were Anthony and Mary or Maria Annunziata, that he

had four sisters whose names were Emily, Anna, Clementina, and Louisa whose ages in 1947 were from 41 to 47 years.

The government has presented in the next division of exhibits documentary evidence that one Felice De Lucia was born in Naples, Italy, on November 14, 1897, whose parents were Antonio and Maria Annunziata (Ex. 28), whose children were a son, Felice, born in Naples, and four daughters born in Ottaviano, Italy, named Emilia Beatrice, born 1898, Anna Clementina, born 1901, Clementina Eleonora, born 1905, and Luise Maria, born in 1907. (Exs. 29, 33A, through D.) Exhibit 42 shows that there was only one Felice De Lucia whose birth was registered on November 14, 1897, in Naples, Italy, and whose parents were Antonio and Maria Annunziata. Exhibits 14M and 14N show there was no birth certificate for a Paolo Maglio, son of Enrico and Maria Torelli, either in Naples or Ottaviano, Italy, or for a Felice De Lucia in Apricena or Ottaviano, Italy. (Exs. 40, 43.) Felice Le Lucia's father died at the age of 55 in January 1925 (Ex. 31A) and his mother at the age of 44 in May 1917 (Ex. 31B).

Government exhibits 36, 37 and 38 are official documents showing that Felice De Lucia, son of Antonio and Maria Annunziata, born November 14, 1897, in Naples was convicted in 1917 of the voluntary homicide of Emilio Perillo, and in 1920 of Vincenzo Capasso. Exhibit 39 is a record showing that Antonio De Lucia was charged with others for the homicide of Raffaele Perillo on July 1920 and with giving assistance to the "premeditated homicide on the person of Vincenzo Capasso, by causing culprit Felice De Lucia, his absconding son, to make up his mind to commit it."

The court is of the opinion that the foregoing evidence clearly establishes that Paul De Lucia and Felice De Lucia are one and the same person.

The use of an assumed name to gain entry into the United States, or such use in the filing of a Declaration of Intention has been held sufficient grounds for revocation of a naturalization certificate, unless it is shown that this name had been one assumed and used prior to entry into the United States. United States v. Goldstein, D.C.N.Y.1939, 30 F.Supp. 771; United States v. Shapiro, D.C.Cal.1943, 43 F.Supp. 927, 928; United States v. Perez, D.C.N.Y.1939, 29 F.Supp. 888; United States v. Marino, D.C.N.Y.1939, 27 F.Supp. 155; United States ex rel. Fink v. Reimer, 2 Cir., 1938, 96 F.2d 217; Landon v. Clark, 1 Cir., 1957, 239 F.2d 631, 632. Cf. United States ex rel. Leibowitz v. Schlotfeldt, 7 Cir., 1939, 94 F.2d 263. The fact that an applicant fails to reveal his criminal record is also grounds for cancellation of a naturalization certificate. Corrado v. United States, 6 Cir., 1955, 227 F.2d 780; United States v. Montalbano, 3 Cir., 1957, 236 F.2d 757; United States v. Ascher, 2 Cir., 1945, 147 F.2d 544; United States v. Accardo, 3 Cir., 1951, 208 F.2d 632; Stevens v. United States, 7 Cir., 1951, 190 F.2d 880.

In Corrado v. United States, supra [227 F.2d 784], the court stated:

" * * * How could any Government official or witness say whether or not citizenship would have been denied appellant from an investigation of the various causes of his arrest, when no opportunity for investigation was afforded? His false statement upon the material matter in actuality caused no investigation to be made. To be awarded citizenship in the United States exacts the highest standard of rectitude. Our Government should be afforded full opportunity for investigation of the moral character and fitness of an alien who seeks to be vested with all the rights, privileges and immunities of a natural born citizen of the United States. * * * "

In United States v. Montalbano, supra [236 F.2d 759], the court said:

" * * * The theory seems to be that one may deliberately engage in a falsehood concerning required facts during naturalization proceedings, without fear of consequences

so long as the truth, had it been revealed would not have resulted in refusal of citizenship. The proposition has a built-in rebuttal. Mere recital of it bares its absurdity. If the government thinks it important enough to ask a question which it has authority to ask, the answer cannot be considered immaterial and meaningless. That the answer may not lead to a refusal of citizenship is not the only consideration. The government is entitled to know all the facts which it requires. * * "

See also United States ex rel. Volpe v. Smith, 7 Cir., 1933, 62 F.2d 808, 812.

In an application for citizenship it is indispensable that true identity be disclosed. The unexplained use of an assumed name by this defendant thwarted investigation as to his eligibility for United States citizenship.

■ The defendant was present in the courtroom throughout the trial and had opportunity to present evidence on his own behalf. His failure to testify or present any evidence may justly give rise to the inference that he was not in a position to combat or explain away the government's evidence. Mammoth Oil Co. v. United States, 1927, 275 U.S. 13, 52, 48 S.Ct. 1, 72 L.Ed. 137; Local 167 of International Brotherhood of Teamsters etc. v. United States, 1934, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; Bilokumsky v. Tod, 1923, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; United States ex rel. Vajtauer v. Commissioner, 1927, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560; Runkle v. Burnham, 1894, 153 U.S. 216, 14 S.Ct. 837, 38 L.Ed. 694; Kirby v. Tallmadge, 1896, 160 U.S. 379, 16 S.Ct. 349, 40 L.Ed. 463; Northern Ry. Co. v. Page, 1927, 274 U.S. 65, 47 S.Ct. 491, 71 L.Ed. 929; United States v. Roberson, 5 Cir., 1956, 233 F.2d 517; Daniel v. United States, 5 Cir., 1956, 234 F.2d 102; United States v. Nowak, D.C.Mich.1955, 133 F.Supp. 191, 196.

Defendant urges that the unexplained failure of the government to present the testimony of the Designated Examiner conducting the hearing on Paul De Lucia's application is tantamount to a conclusion that his testimony, if he were called, would not sustain the contention of the government that Paul De Lucia had falsified his application for naturalization. In fact, the defendant contends that the entire evidence fails to show that this defendant "hid anything from the naturalization examiner". As shown by the testimony of Stephen Durisch and the deposition of Andrew Jordan, George Mackay was identified as the Designated Examiner in the proceedings involving Paul De Lucia. Mackay was not called upon to testify. The government explains this omission by submitting with its reply brief a Certificate of Death showing the decease of George Mackay.

Stephen Durisch and Andrew Jordan, both long time employees of the Immigration and Naturalization service, who served on occasion as Designated Examiners, testified to the usual and customary mode of processing and examining applicants for citizenship. Their testimony to the effect that this petition of Paul De Lucia was processed in the customary way leads the court to the conclusion that this defendant had not disclosed to the Designated Examiner all the facts material to his application for citizenship and that such failure and misrepresentation foreclosed any further inquiry on the part of the Naturalization Office.

■■ The court holds that the use by this defendant of a name other than his own, his failure to disclose his true identity, and the concealment of other material facts vitiates the certificate of citizenship granted to him. This memorandum shall constitute the Findings of Fact and Conclusions of Law. Government counsel should present an appropriate decree within ten days from date hereof. The government's motion for a rule to show cause why this defendant should not be punished for contempt of court is allowed and the defendant is given ten days within which to answer.