UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul DE LUCIA, Defendant-Appellant.

No. 12093.

United States Court of Appeals
Seventh Circuit.

June 18, 1958.

See also, 256 F.2d 493.

488

William Scott Stewart, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Edwin A. Strugala, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of Counsel, for the United States.

Before SCHNACKENBERG, HASTINGS and PARKINSON, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

In a denaturalization proceeding in which § 340(a) of the Immigration and Naturalization Act of 1952 [1] was invoked to sustain the jurisdiction of the district court, a decree was entered on June 11, 1957, revoking, setting aside and making void an order of said court, entered September 27, 1928, admitting Paul De Lucia, also known as Felice De Lucia, to citizenship. From that decree De Lucia has appealed.

In the denaturalization proceeding, appellee, sometimes hereinafter referred to as the government, filed its complaint on October 10, 1956 against De Lucia, and there was attached thereto an affidavit by Charles Gordon, Regional Counsel for the Northwest Region, Immigration and Naturalization Service, United States Department of Justice, dated August 9, 1956, as required by said § 340(a). In his affidavit Gordon deposed and said that, as said Regional Counsel, he had access to the official records of said Service, "from which the following facts appear: * * *." There follows a recital of pertinent facts as to De Lucia.

Relying on United States v. Zucca, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964, De Lucia contends that an affidavit showing good cause is a prerequisite to the maintenance of a denaturalization proceeding, and, while the affidavit was submitted under the pretense that it shows good cause, affiant's assertions therein are not dependent upon his knowledge, and that, although he swears that he has access to the official records of the Service, he does not claim he is the custodian thereof or that the files were complete, but he merely states his "opinion as to what may be shown by some files."

The question of the sufficiency of this affidavit has been resolved by Nowak v. United States, 78 S.Ct. 955, 963. In accordance with that decision, we hold the Gordon affidavit sufficient.

The complaint alleged that on or about April 10, 1928, pursuant to the Immigration and Naturalization Act of June 29, 1906, De Lucia, who was born in Naples, Italy, on or about November 14, 1897, filed in the court below a petition for naturalization in the name of Paul Maglio, and therein prayed that his name be changed to Paul De Lucia; that on September 27, 1928 that court admitted him to citizenship.

The complaint further alleged that in his declaration of intention dated January 9, 1925, attached to and made a part of his petition, De Lucia alleged under oath that his name was Paul Maglio and that he had been born in Apricena, Italy on July 10, 1898; that in the preliminary form of the petition for naturalization dated February 21, 1928 he stated that his full, true and correct name was Paul Maglio; that he had used the name of Paul De Lucia because he "got married on that name"; that his mother's name was Torelli Nunzia Maria; that he was born July 10, 1898, in Apricena, Italy; that he arrived in the United States at New York August 10, 1920, on the SS

1. 8 U.S.C.A. § 1451(a).

Ryndam; and that he further alleged under oath that he had never been arrested.

The complaint further alleged that De Lucia, in his petition for naturalization aforesaid, alleged under oath that his name was Paul Maglio; that he was born on July 10, 1898 in Apricena, Italy; that he had arrived in New York at the port of New York City on August 10, 1920 on the vessel Ryndam.

The complaint charged further that the aforesaid allegations of De Lucia were false and known by him to be false in the following particulars:

(I) His name was Felice De Lucia and not Paul Maglio;

(II) He was born November 14, 1897 in Naples, Italy and not on July 10, 1898 in Apricena, Italy;

(III) His mother's name was Maria Annunziata and not Torelli Nunzia Maria;

(IV) He had been arrested and convicted of voluntary homicide under his true name of Felice De Lucia on May 18, 1917 in Naples, Italy;

(V) De Lucia's entry into the United States at New York City on August 12 (*sic*) 1920 was unlawful and there was not attached to his petition for naturalization a certificate of arrival for a lawful entry into the United States for permanent residence.

The complaint further charged that De Lucia assumed the identity of Paul Maglio in order to conceal his true identity, to hide from the immigration officers at the time of his arrival and from the naturalization examiners and the naturalization court the fact that he previously had been arrested and convicted for voluntary homicide in Naples, Italy; and that he had fled from Italy in order to escape arrest for a subsequent prosecution.

The complaint further charged that the Immigration and Naturalization Service, relying upon the foregoing false and fraudulent representations by De Lucia, did issue a certificate of arrival in the name of Paul Maglio, which De Lucia appended to his petition for naturalization; that the concealments and misrepresentations of De Lucia heretofore set forth were deliberately, wilfully and intentionally made in the proceedings leading to his naturalization in order to deceive the naturalization examiners and the court, and further to conceal material facts from them by failing to reveal his true identity and his record of criminality prior to entering the United States; that the concealments were further made to conceal his lack of good moral character and the defendant's lack of attachment to the principles of the Constitution of the United States, to prevent the making of a full and proper investigation of his qualifications for citizenship, to induce the Immigration and Naturalization Service to rely upon the false representations and concealment of the material facts, to make the unconditional recommendation to the court that his petition for naturalization be granted, and, further, to preclude inquiry by the court concerning his qualifications and eligibility for citizenship and to procure naturalization in violation of the law; that the naturalization of the said Paul De Lucia formerly known as Felice De Lucia was procured by concealment of material facts and by wilful misrepresentation, in that he deliberately and intentionally made false statements in the proceedings leading to his naturalization as set forth above.

The complaint prayed for a decree revoking and setting aside the order of the court admitting De Lucia to citizenship, and for general relief.

Defendant filed an answer denying every allegation in the complaint.

Following a trial before the court, the trial judge filed a memorandum which was ordered to constitute findings of fact and conclusions of law. De Lucia's motion for a new trial was overruled and the decree of denaturalization, from which this appeal is taken, was entered.

To establish its case the government introduced evidence, consisting of documentary exhibits, the oral testimony of

**490**

various witnesses and the deposition of another. De Lucia offered no evidence.

In its memorandum, after a detailed recital of the relevant evidence, the court found (1) that defendant is the Paul De Lucia to whom a certificate of naturalization was granted September 27, 1928 and that he used the name Paul Maglio when he entered this country and when he applied for a certificate of naturalization; (2) that the government has conclusively shown that the defendant, Paul De Lucia, was not Paul Maglio, born July 10, 1898 in Apricena, Italy; (3) that he falsely assumed the name of Paul Maglio to enter this country; (4) that he committed perjury when he stated his name was Paul Maglio in the preliminary papers for citizenship and (5) thereby committed a fraud on the court, and also (6) that the evidence clearly establishes that Paul De Lucia and Felice De Lucia are one and the same person. The court further found (7) that in an application for citizenship it is indispensable that true identity be disclosed, and (8) that the unexplained use of an assumed name by this defendant thwarted investigation as to his eligibility for United States citizenship.

The court pointed out that De Lucia was present in the courtroom throughout the trial and had opportunity to present evidence on his own behalf.

The court stated as a conclusion that De Lucia had not disclosed to the Designated Examiner all the facts material to his application for citizenship and that such failure and misrepresentation foreclosed any further inquiry on the part of the naturalization office.

The court held that the use by De Lucia of a name other than his own, his failure to disclose his true identity, and the concealment of other material facts vitiates the certificate of citizenship granted to him.

While the court did not expressly indicate what it meant by the words "the concealment of other material facts", it is apparent to us from the context of the memorandum that the court had in mind De Lucia's failure to reveal his convic-

tions for homicides in Italy prior to his coming to this country, to which the court had referred in its memorandum.

██ We are aware that, when the government seeks to deprive a naturalized citizen of his citizenship, it has a burden which must be met with evidence of a clear and convincing character. Schneiderman v. United States, 320 U.S. 118, 123, 63 S.Ct. 1333, 87 L.Ed. 1796. From our examination of the record in this case we are convinced that the government has here met its burden. The district court's findings of fact are fully supported by the evidence and, therefore, we are bound by those findings.

Its conclusions of law and the decree which it entered find ample support in the decided federal cases.

██ The use by an alien of an assumed name to gain entry into the United States, is ground for deportation, Landon v. Clarke, 1 Cir., 239 F.2d 631, unless satisfactorily explained, United States ex rel. Leibowitz v. Schlotfeldt, 7 Cir., 94 F.2d 263. No attempt to explain such use is made in this case. Such use, in attaining citizenship by naturalization, is sufficient ground for revocation thereof, inasmuch as concealment of one's true name is an effective impediment to an investigation or inquiry relative to the person involved. Had De Lucia used his own name at all relevant times, a path of inquiry leading to his criminal record would have been opened to the government.

██ The fact that an applicant for citizenship conceals from the government his criminal record is a ground for refusing naturalization, Stevens v. United States, 7 Cir., 190 F.2d 880, or for ordering denaturalization, United States v. Ascher, 2 Cir., 147 F.2d 544; United States v. Montalbano, 3 Cir., 236 F.2d 757; Corrado v. United States, 6 Cir., 227 F.2d 780; United States v. Accardo, 3 Cir., 208 F.2d 632, adopting D.C., 113 F.Supp. 783.

██ It seems that De Lucia in this court contends that he cannot be denat-

uralized because the order of naturalization entered in 1928 is *res judicata.* He supports his contention by citing some of the syllabi from United States v. Kusche, D.C., 56 F.Supp. 201. This effort has brought forth from government counsel this opus:

> "Res judicata, as a defense in these proceedings, literally has been killed by drowning under the inundation of decisions released, first, in Johannessen v. United States, 225 U. S. 227, 32 S.Ct. 613, 56 L.Ed. 1066; for fraudulent procurement, in United States v. Ness, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321, and in Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156, and United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853, for illegal procurement of citizenship. Wilful misrepresentation and concealment of material facts in these cases have only opened the judicial floodgates wider and killed the defense deader. * * * Surely the defense here has been thoroughly necrotized."

More prosaically we hold that, inasmuch as the denaturalization decree was based upon charges of wilful concealments and misrepresentations by which the entry of the order of naturalization was illegally and fraudulently procured, the latter was not *res judicata* of issues presented in the denaturalization proceeding.

In his brief De Lucia, under Proposition of Law VI, states: "The Trial Court erred in admitting the exhibits and giving them probative value." He cites no authorities in support of this statement. He merely says "See Argument," without referring to any part of the argument and certainly to no page number. The argument consists of 90 pages of printed matter running continuously without titles or breaks, and we do not feel obligated to attempt to locate the part to which reference is intended to be made by counsel.

Again, he states in Proposition of Law VII, the following:

> "It was error for the Trial Court to allow evidence of custom and to give same probative value."

He cites Cufari v. United States, 1 Cir., 217 F.2d 404, which furnishes a clue enabling us to locate the part of his argument which pertains to this proposition.

We construe De Lucia's contention that it was error "to allow evidence of custom" to mean that the evidence of custom in this case was inadmissible because it was incompetent. However, only the question of *materiality* (not *competency*) was raised by his objection to the admission of two basic government exhibits, a preliminary form for petition for naturalization, and a document known as a face brief. These documents were introduced by the government on the theory that they were made according to the established custom and practice in the Service.

▆▆▆ It is elementary that De Lucia, having objected to the admissibility of these exhibits solely on the issue of materiality, is in no position to raise in this court an objection to their competency as evidence.[2] "Materiality", with reference to evidence, means the property of substantial importance and it has been said that evidence is material where it is relevant and goes to the substantial matters in dispute or has a legitimate or effective bearing on the decision of the same, while evidence is competent if it is fit for the purpose for which it is offered. 31 C.J.S. Evidence §§ 159, 185, pp. 868, 906. "Competency", in the law of evidence, is the presence of those characteristics, or the absence of those disabilities, which render a witness legally fit and qualified to give testimony in a court of justice;— applied, in the same sense, to documents

---

**2.** Employers Mut. Casualty Co. v. Johnson, 5 Cir., 201 F.2d 153, 155.

28 U.S.C.A. rule 46 provides:

"* * * it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court * * * his objection to the action of the court and his *grounds* therefor; * * *." (Emphasis supplied.)

or other written evidence. Black's Law Dictionary (1950) 355.

 However, it is clear to us that, on the basis of evidence of custom in the naturalization service,[3] these documents were admissible. Nothing in the Cufari case indicates that such records are not admissible. In fact, no such question was there raised. The court said, 217 F.2d at page 408:

"The controlling question here * * * is whether Cufari was asked, either at his preliminary examination or at the hearing in the Superior Court of the Commonwealth of Massachusetts, whether he had ever been arrested and had answered in the negative."

The court then, 217 F.2d at page 409, proceeded to consider a docket slip, being Labor Form 2328 (which is similar to the face brief in this case), and also the testimony of the district director of immigration and naturalization as to the practice of examiners in asking applicants for citizenship if they had ever been arrested and noting applicants' answers on their docket slips. The court did not have before it and did not discuss any question as to the admissibility of such evidence. Hence the Cufari case is no authority on that question. As to the *effect* to be given to such evidence, the court held:

"No doubt Cufari's docket slip coupled with the evidence of the practice and custom of Examiners generally and of Examiners Davis and Mahoney in particular is enough to establish by the balance of the probabilities that Cufari was asked if he had ever been arrested and answered that he had not. * * *"

Thereupon the court went on to decide the case *upon the foregoing evidence,* considered in connection with the fact that *Cufari, testifying on his own behalf, said that he had no recollection of being asked about arrests either at his preliminary examination or at the hearing on his petition in court.* Differing from the lower court's conclusion, it held that the government had not proved its case by that clear, unequivocal and convincing evidence which did not leave the issue in doubt, and hence it reversed the district court. But in the case at bar, De Lucia did *not* testify and there was no

---

3. It appears from the testimony of Andrew Jordan, who is a retired district director of immigration and naturalization, that he was familiar with the custom in the naturalization service and knew the handwriting of George McKay (McKay died before the trial) and Stephen Durisch, that on the face brief he made a pencil notation "J" indicating himself and "9–27–28" indicating date of admission on final hearing. He also testified that the initials "G.M." under the heading "Adjournments" and following the words and figures "from APR 10–19–28" were written by examiner McKay, and that the handwriting under the heading "Result of Examination" and the notation "Arr. no" is in the handwriting of examiner Durisch.

In reference to question 24 in preliminary form for petition for naturalization, which reads "Have you ever been arrested?", followed by the word "no" in handwriting, Jordan testified that a pencil check mark above the word "no", according to the practice would indicate that either the preliminary examiner or the designated examiner made the check mark at the time he was questioning the petitioner and that the applicant answer "no".

Durisch testified that all of the handwriting in ink on the front of the face brief is his, and that his initials "SD" appear thereon. He further testified that the date August 10, 1920 on the face brief indicates when the naturalization petitioner arrived in the United States and his continuous residence thereafter, and that "Arr. no" means applicant was asked whether he had been arrested and that his answer was "no".

As to the preliminary form for petition for naturalization, Durisch testified that he made black ink marks along the left side of various lines, a procedure governed by instructions, which were for the purpose of showing that the examiner read each question to the applicant and that the latter's oral answer agreed with that on the preliminary form.

All of this testimony was given without objection.

contradictory evidence leaving the issue in doubt.

For the reasons herein set forth, the decree of the district court is affirmed.

Affirmed.